(Decided June 14th, 1858.)

---

## SAMUEL E. SCHINDEL *vs.* ANDREW J. SCHINDEL.

A wife living in a state of separation from her husband, cannot be regarded as his *agent*, and has no authority to bind him by any *contract*, except for necessaries: she cannot *authorize another* to *enter his house*, and take therefrom the household furniture.

The object of the recent acts of Assembly of this State, in reference to the property of married women, was to *protect* the property of the wife from the *debts* of the husband, and, during life, secure its enjoyment to the wife:

they confer on her no right to separate from her husband without cause, and remove from his custody all her personal property.

In an action of trespass *de bonis asportatis*, payment of the judgment against the defendant, confers on him the *ownership of the property taken*, and therefore the measure of damages is *its value* at the time of the asportation.

In such an action the jury may consider any facts and circumstances accompanying and giving color to the trespass, for the purpose of *increasing* the damages; the *motives* which induce a tortious act, are always matters for the consideration of the jury.

APPEAL from the Circuit Court for Washington county.

This was an action brought by the appellee against the appellant, to recover damages for an alleged trespass committed by the defendant, in entering into, and taking and removing from the plaintiff's dwelling-house, in Hagerstown, a large quantity of furniture, and other articles of personal property, particularly described in the declaration. Pleas, *not guilty* and *license*.

The facts of the case are sufficiently stated in the opinion of this court. *Three* exceptions were taken by the *plaintiff*, which need not be stated; and *one* by the *defendant*, as follows:

*Exception.* Upon the whole testimony, the plaintiff asked *seven* instructions, in substance as follows:

1st. That if the jury believe, from the evidence, that defendant, without the leave or authority of the plaintiff, entered the dwelling-house mentioned in the declaration, and that the plaintiff was then possessed thereof, then the plaintiff is entitled to recover of the defendant therefor; that such an entry would be a trespass on the part of the defendant as against the plaintiff.

2nd. If the jury believe, from the evidence, that the plaintiff was possessed of the dwelling-house mentioned in the declaration, and of all such personal chattels as were therein, and that defendant, without the leave and authority of the plaintiff, entered therein, and took out and carried away therefrom, divers of such goods and chattels, such as are described in the declaration, then the plaintiff is entitled to recover; and if they further find that defendant has never returned to the plaintiff

nor replaced said goods and chattels, then the legal and proper measure of damages therefor is their true value, as shown by the evidence, at the time they were taken and carried away.

3rd. If the jury find the facts as stated in either of the preceding prayers, then, for the purpose of increasing the damages, they can consider any facts and circumstances that may be in proof before them, if any, that accompanied and gave character to the trespass, and which showed aggravation in the commission of the same.

4th. If the jury find that defendant took out of the plaintiff's dwelling-house, without his authority or consent, divers of the goods and chattels found therein, which were, at the time, in the plaintiff's possession, and that they were taken to another house, where the plaintiff's wife was then, and has ever since been, living, in a state of separation from, and without the consent of, her husband, and that upon being taken to said house, they have been used as well by the defendant and his family as the plaintiff's wife, then the plaintiff is entitled to recover of the defendant the value of the goods so taken and carried away.

5th. If the jury find that the plaintiff's wife, Lavinia E. Schindel, was living separate and apart from her husband, and in the house with the defendant, at the time the alleged trespass by the defendant was committed, the fact of such separation and living apart did not clothe her with any power or authority to interfere with the property or rights of her husband, or to license or authorize others to do so, there being no evidence before the jury showing a legal justification, on her part, in leaving and living separate and apart from her husband.

6th. If the jury find that defendant entered the plaintiff's dwelling house, and took and carried away therefrom the goods and chattels of the plaintiff, in his absence, then it is not competent to the defendant to justify such entry and asportation by the leave or authority of the plaintiff's wife, to him given for that purpose.

7th. That there is no evidence in the cause from which the jury can find that the plaintiff's wife was the authorized agent

of the plaintiff, at the time of the alleged trespass, to employ and procure the defendant to take and remove the goods and chattels of the plaintiff from his dwelling-house to the house in which the defendant was living, or to any other house or place, or for any purpose.

The defendant, at the same time, submitted *five* prayers, in substance as follows:

1st. If the jury find, from the evidence, that the plaintiff's wife removed the goods mentioned in the declaration from the plaintiff's house to that of Mrs. Emmert, and that she at that time there resided, and that, in said removal, the defendant assisted her at her instance and request, and that said goods, upon said removal, if so found, continued to be and were, at the commencement of this action, in the possession of the plaintiff's wife, then the same may be considered by the jury in mitigation of damages.

2nd. If the jury find that the defendant removed the goods mentioned in the declaration from the plaintiff's house to the residence of his wife, at Mrs. Emmert's, and that this was done by the defendant at her instance and request, and she being present at the doing thereof, and directing the same, and that said goods, upon said removal, if so found, continued to be and were, at the commencement of this action, in possession of the plaintiff's wife, at said residence, then the jury may consider the same in mitigation of damages.

3rd. If the jury find that any portion of said goods, and whatever it may be, was the property of the plaintiff's wife, at the time of her marriage with him, and that the same was removed from his house, as stated in the two preceding prayers, and that the same continued to be and was, at the commencement of this action, in the possession of the plaintiff's wife, then, as to that portion of the goods and chattles so found, the same may be considered by mitigation of damages.

4th. This prayer asserts that the jury may, in mitigation, award but *nominal damages,* if they find the facts stated in the defendant's *first* prayer.

5th. If the jury find that any portion of said goods, and whatever it may be, was the property of the plaintiff's wife,

at the time of her marriage with him, and that the same was removed, as stated in the defendant's first prayer, and the same continued to be and was, at the commencement of this action, in her possession, then, as to such portion of said goods, the jury may, in mitigation, award but *nominal damages.*

The court (PERRY, J.) granted all the plaintiff's prayers except the *seventh,* which was refused, and rejected all of the defendant's as asked, but granted the first three with this qualification: "that the facts set out in said prayers may be considered in mitigation of any circumstances, if any there be, that could entitle the plaintiff to exemplary damages, if the jury find that a trespass, in fact, was committed by the defendant, as alleged."

The defendant excepted to the granting of the plaintiff's *second, third, fourth* and *fifth* prayers, and to the refusal of his own prayers as asked, and to the granting of his first three prayers with the above qualification. The verdict and judgment were in favor of the plaintiff for $629.50, damages and costs, and the defendant appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and BARTOL, J.

*Wm. T. Hamilton* for the appellant:

1st. The plaintiff's *second* and *fourth* prayers are vicious, because they require the jury to find the value of the property taken as the measure of damages, disregarding the continuing possession of the plaintiff's wife, or her interest in it, as shown by the proof. The possession of the wife is the possession of the husband, and the jury are here required to allow the plaintiff the full value of that which he possessed at the institution of the suit. Again, much the largest portion of the property taken, belonged to the plaintiff's wife at the time of her marriage, and, under the act of 1853, ch. 245, is her separate property. A married woman can deal with her separate property, and yet, notwithstanding this, and her possession of it, the jury are required to allow the plaintiff its *full value.* The *third* prayer relates, in part, to the *second,* and depends upon *its* sufficiency.

2nd. The plaintiff's *fifth* prayer goes to the whole trespass, and ought not to have been granted: 1st, because it assumes the plaintiff's wife had no right to interfere with his property or rights, or authorize others to do so, and, upon this assumption, asserts that the *fact* of separation did not clothe her with it; 2nd, because it denies to the jury the consideration of any right of the plaintiff's wife to enter upon his premises, or as such, or as agent, express or implied, to authorize others to do so; 3rd, because it denies to the jury the consideration of any right or power of the wife to deal in any manner with his goods, and, further, denies any consideration of the right of the wife to deal with her separate property; and 4th, because it may mislead the jury, by placing the trespass and its denial or justification upon the *fact of separation*, and then instructs the jury that there is no evidence of a justifiable separation on the part of the wife.

A wife cannot commit a trespass as against her husband; she cannot steal from him. *Bac. Abr. Title, Baron & Feme (G.)* The authority of the wife may justify an entry into her husband's dwelling; also familiar intimacy in a family may justify an entry, so as to deprive it of the character of a trespass *ab initio.* And the wife may sell, or give and deliver the goods of her husband to a stranger, who may carry them away, and *trespass* will not lie, but *trover.* 1 *Bl. Com.*, 442, note. *Selwyn's N. P.*, 1359.

The *sixth* prayer is also wrong, for the reasons above stated, and also for the additional reason, that it puts the whole question of the agency or authority of the wife to allow entry or asportation on the fact of the *absence* of the plaintiff at the time, so that if the jury found absence on the part of the plaintiff, they must discard all authority on the part of the wife, and find a trespass.

3rd. The *first, second* and *third* prayers of the defendant go to the mitigation of the damages generally, and ought to have been granted: 1st, because the wife can deliver the goods of her husband to a stranger, and trespass does not lie, for the wife having a power over her husband's goods, the possession was lawfully obtained; 9 *Bac. Abr.*, 476, *Title Trespass (E;)*

1 *Bl. Com.*, 442, *note.* 2nd, because the possession of the wife is the possession of the husband; 2 *Bac. Abr.*, 61, *Title, Baron & Feme (K.)* Unless allowed in mitigation, the plaintiff would obtain the full value of the property, and have the property itself by the possession of his wife. The verdict and judgment for the value of the property, and satisfaction, vests it in the defendant, and the property being in the possession of the plaintiff, and belonging to the defendant, the plaintiff would be liable in an action for it. The jury ought, therefore, to have been permitted to consider this possession in the plaintiff in mitigation of damages, and without the qualification made to these prayers by the court. 3rd, because the wife can deal with her separate property. *Clancey on Husband & Wife*, 355. A large portion of this property belonged to the wife, at the time of her marriage, and this, under the act of 1853, ch. 245, is her separate property. In the case of *Unger vs. Price*, 9 *Md. Rep.*, 558, this court has said, that this act has materially modified the law as to the rights of the husband over the property of his wife, "and the whole *scope* and *purpose* of the law seem to be to *invest* a married woman with the *powers* of a *feme sole*, with reference to such property as she may be authorized to hold and enjoy to her sole and separate use." This decision, therefore, clothes the wife with the *powers* of a *feme sole*, over the property which she had at the time of her marriage, and, having such power, she could *order* it to be *removed*, as was done by the defendant in this case. In an action of trespass, the defendant, in mitigation of damages, may prove that the goods did not belong to the plaintiff, and that they have gone to the use of the true owner. 9 *Pick.*, 551, *Squire vs. Hollenbeck.* 3 *Zabriskie*, 342, *Hopple vs. Higbee.* 4th, because the facts stated in these prayers are proper for the consideration of the jury, in mitigation, as showing the intent, conduct and interest of the defendant. 2 *Saunder's Pl. & Ev.*, 1121, 1122.

4th. Upon the principle involved in the consideration of the aforegoing prayers of the defendant, his *fourth* and *fifth* prayers are correct, and ought to have been granted. The jury, by these prayers, were allowed to find but nominal damages, as

contradistinguished from the plaintiff's second prayer, which required them to find the true value of the property. The plaintiff's *seventh* prayer was properly rejected; for there was evidence applicable to the issue. To warrant such an instruction, there must be no evidence applicable to the issue, or tending to prove any material fact. 2 *H. & G.*, 183, *Ferguson vs. Tucker.* 12 *G. & J.*, 236, *Gray vs. Crook.*

*Richard H. Alvey,* for the appellee:

1st. As to the *second* and *fourth* prayers granted by the court below. If the jury found, as doubtless they did, the facts according to the hypothesis of these prayers, there could be no question as to the right of the plaintiff to recover. The question could only be as to what was the legal measure of damages for the goods asported and converted. Did the court err in its standard of damages, as fixed by these prayers? I submit that it did not. There is nothing in either of these prayers to distinguish the case from the ordinary one of a mere stranger invading the rightful possession of property, and converting it to his own use, without the least authority or justification. In all such cases the party injured is, at least, entitled to recover the value of the property taken and converted. 5 *Mees. & Wels.*, 351, *Martin vs. Porter.* 9 *Mees. & Wels.*, 672, *Wild vs. Holt.* 6 *Pet.*, 262, *Conrad vs. The Pacific Ins. Co.* 76 *Eng. C. L. Rep.*, 692, *Reid vs. Fairbanks.* To fix a measure by which the injured party could recover less than the full value of his goods, would be to suffer a *tort feasor* to take advantage of his own wrong, and, instead of making the recovery operate a punishment on *him,* would inflict the grossest hardship and injustice upon the innocent party, and confer an actual benefit upon the lawless invader of right; for, by the recovery in trespass for the conversion of goods, and the payment of the judgment by the defendant, the goods become the property of the defendant, absolutely, as if he had regularly purchased them. 5 *H. & J.*, 211, *Hepburn vs. Sewell.* It therefore results, as a legal consequence, and from the commonest rules of justice, that nothing less than the full value of the goods should be given. And so uniformly is

the rule applied, and so determined is the law against *tort feasors*, that even a party having a mere temporary possession of goods for a limited time or purpose, as against a stranger who disturbs such possession and converts the goods, he will be entitled to recover in trespass their full value, without reference to any reversionary rights. 9 *Gill*, 7, *Harker vs. Dement*.

2nd. As to the plaintiff's *third* prayer. The law has long since been well settled, that the plaintiff, in an action of trespass, may give in evidence, for the purpose of enhancing the damages, the circumstances which accompanied and gave character to the wrong done. Such facts and circumstances as show an evil motive or intent, are considered in aggravation. The *quo animo* is material. Besides any inconvenience and injury occasioned to the plaintiff, by taking the goods away under the particular circumstances of the case, are proper to be considered in estimating the damages to the plaintiff and the punishment to the defendant. The instruction in question simply informed the jury of a principle of law too clear for dispute, and which they could apply, or not, as they found the facts to exist. 7 *H. & J.*, 67, *Shafer vs. Smith*. 2 *Greenlf. on Ev.*, sec. 272.

3rd. As to the plaintiff's *fifth* and *sixth* prayers. The fact of the plaintiff's wife living apart from him, certainly clothed her with no extraordinary rights or power over the property of her husband, but rather divested her of all power. Any agreement entered into by the wife, without the express or implied consent of the husband, would be absolutely void, and the husband could maintain trover or trespass for any goods of his, or to which he might have the right of possession, which the wife had sold or disposed of, without his consent. 1 *Sid.*, 120. 1 *Lev.*, 4, *Manby, et al., vs. Scott*. 2 *Atk.*, 452, *Oldham vs. Hughes*. 2 *Wilson*, 3, *Roberts vs. Pierson*. 8 *Term Rep.*, 545, *Marshall vs. Rutton*. 2 *Bos. & Pull.*, 105, *Beard vs. Webb*. 1 *Bl. Com.*, 442, and *note*. 42. While the wife resides with her husband, she has power, as agent, to purchase on his account the ordinary articles for domestic and family use, so long as the husband's acquiescence can be implied

Schindel *vs.* Schindel.

from his knowledge of the course of the wife's dealing, and other circumstances.  But when the wife leaves her husband, and lives apart from him, without justifiable cause, she has no longer any right or authority to contract on his account, not even for *necessaries*, nor in any way to pledge his credit or compromit his rights.  It is only when she leaves her husband by his consent, or for a legal and justifiable cause, that she is constituted an agent, by implication, with authority to purchase *necessaries* on the credit of her husband, and the purchasing of *necessaries* is the *only* thing authorized by this implied agency.  2 *Kent*, 146 to 148.  It is laid down as the settled law, in books of good authority, that where a married woman is found living apart from her husband, the *prima facie* presumption is, that it is neither in consequence of his improper conduct, or by his assent, and, therefore, it always lies on the person who gave her credit, to show what were the circumstances under which they separated.  *Smith on Contracts*, 291.  5 *Car. & Payne*, 200, *Reed vs. Moore.*  1 *Moody & Malkin*, 18, *Mainwaring vs. Leslie.*  So that the wife, by leaving her husband without justifiable cause, divested herself of all authority to affect him by any act or contract of hers; and certainly if she possessed no authority herself, she could impart none to others.  But whether the wife was living with her husband, or apart from him, clearly she had no authority simply by virtue of her relation as wife, to license the defendant to interfere with, and commit a trespass upon, the property and rights of the husband, nor could such a license in any way avail to protect or justify the defendant.  *Cro. Eliz.*, 876, *Holdringshaw vs. Rag.  Ibid.*, 246, *Tayler vs. Fisher.  Selw. N. P.*, 1040, *Cock vs. Worthham.*  5 *Phil. Ev.*, 194.  And whether the wife was living absent from her husband, with or without justifiable cause, was wholly immaterial.  Under no circumstances, unless expressly authorized by her husband, could the wife give the defendant an available license.  The court below, in granting these prayers, only determined what is clearly the well settled law, that the defendant could not justify under a license from the plaintiff's wife.

4th.  As to the defendant's five prayers which were refused

by the court below.   They all embrace two propositions only:
1st.  If the defendant acted under the direction of the plaintiff's
wife, in entering the house and removing the goods, or, in other
words, if the defendant was licensed by the wife, and that the
wife, apart from her husband, has had the use and control of
the goods since their removal, then the damages are to be miti-
gated, and, according to the fourth prayer, to be merely nomi-
nal.  2nd.  If any part of the goods removed were goods be-
longing to the wife, before her marriage with the plaintiff, and,
since their removal, have been in the possession of the wife,
she living separate from her husband, then the damages are to
be mitigated as to such goods, and, according to the *fifth* prayer,
to be merely nominal.   I contend that upon no principle could
such prayers have been granted.   It is clear, from the authori-
ties already cited, that the defendant could not justify by show-
ing a license from the wife.   If the wife had no authority to
license the defendant, and her sanction was wholly a void act
as against the husband, upon what principle is it that such
sanction or license of the wife could be matter of mitigation?
It could as well be contended, in an action for *crim. con.*, or
seducing away a wife or servant, that the consent of the wife
or servant should be taken in mitigation of damages.   But
whoever heard of such a proposition being announced to a
jury by any judge?   The law proceeds upon a very different
principle, and considers the wife *as having no power to consent.*
1 *Chitty's Pl.,* 167.   Nor does it at all change or affect the
case, that a portion of the goods removed belonged to the wife
before her marriage with the plaintiff.   By the marriage the
goods became the property of the husband, so far, at least, as
to entitle him to the possession and use of them as against all
persons.   The acts of 1842, ch. 293, and 1853, ch. 245, have
no application to the case.   They have not divested the hus-
band of his right of property in the goods of the wife, at the
time of marriage.   By no construction have they divested the
husband of his right to possess and enjoy such goods of the
wife.   All that they do, or were intended to accomplish, is to
protect such property from the *debts* of the husband.   The
husband, then, having the right to possession and enjoyment,

is entitled not only to sue for an asportation of the goods, but to recover their full value as the measure of damages, where, as in this case, they have been withheld and converted by the agency of the defendant. 9 *Gill*, 7, *Harker vs. Dement.* According to all the proof, the goods were removed by the defendant, and taken to another house, in which the defendant and his family resided, and continued to reside at the time of the trial, and in which the plaintiff had no control or dominion whatever, and even to enter which, according to the proof of the defendant himself, the plaintiff was forbidden.

Le Grand, C. J., delivered the opinion of this court.

This action was brought by the appellee, to recover damages for a trespass alleged to have been committed by the appellant. The principal facts of the case, as developed both on the part of the plaintiff and defendant, may be thus stated: The plaintiff and defendant are brothers, and they married sisters; defendant, before, at the time, and since, lived in the house of, and with, his wife's mother. The plaintiff was married sometime in the month of May 1855, and went to house-keeping, and was separated from his wife within the same year. His wife, sometime in the fall of the year, left the house of her husband, and went to that of her mother, declaring that she could not longer live with him, as he treated her badly. The mother sent for the husband, and both she and his brother, the defendant, sought to reconcile the parties, but did not succeed in doing so. The husband and wife, however, lived at the house of the mother of the wife for about five days, when the husband went to the house of his father, which was situate about one and a half miles from Hagerstown. During his absence, the defendant, accompanied by others, employed for the purpose, entered his house, in Hagerstown, and took from it certain household and other furniture, and conveyed the same to the house of the mother of his wife, where it remained up to the time of the trial. Evidence was offered to show that this furniture, after its removal, was used in common by the family of the defendant, and that of Mrs. Emmert, the mother, and by the wife of the plaintiff, and, also, that the removal

was by the direction and in the presence of the wife. There was also evidence that some of the property was that of the wife, prior to her marriage.

The plaintiff, during the progress of the trial, took exceptions to certain testimony allowed by the court to be adduced in behalf of the defendant. In the view we have of this case, it is not necessary we should advert to them, and the more particularly so, as the question which they present is raised by the prayers of the respective parties.

The instructions of the court must be construed in reference, exclusively, to the circumstances given in proof, and, therefore, it is no part of the duty of this court to consider the possible state of law as applicable to a state of facts not presented by the record. Whether or not a wife, while living and cohabiting with her husband, can commit a trespass on his property, or whether or not, while in such a condition, she can authorize a stranger to enter upon the premises of her husband and remove therefrom his property, are not questions now before us. The uncontested fact is, that at the time of the alleged trespass, the wife was living with her mother, apart and separate from her husband, without his consent, and contrary to his wish. And it is this state of case, and none other, with which we have to deal. It may be affirmed as undeniable, that there is no case (except one in which necessaries have been procured) where a wife is living separate from her husband, that she has been regarded as his agent. From wise and humane considerations, when the wife is free from blame, and living separate from her husband, she is permitted to bind him for her necessaries. It is not necessary to specify the particular circumstances under which the contract of the wife will bind the husband, when she is living apart from him; it is sufficient to say, in every case, her authority is *limited* to the making of contracts for *necessaries*. There is no book or case to the contrary of this. The acts, therefore, of the defendant cannot derive a justification from any license or authority conferred by the wife of the plaintiff, while she was living apart from him.

But it is supposed that, inasmuch as there was proof in the

Schindel vs. Schindel.

case that some of the property removed was that of the wife, prior to her marriage with the plaintiff, our acts of Assembly, of 1841, ch. 161, 1842, ch. 293, and 1853, ch. 245, effected an enlargement of her power, and diminution of the right of custody of her husband, and, in fact, conferred upon her the authority to order the entry and removal complained of. We do not concur in this interpretation of the several acts of Assembly. With the soundness of the policy in which they originated, we have nothing to do; that was matter for the consideration, peculiarly, of the legislative branch of the government. Although this legislation has materially abridged the rights and power of the husband, we cannot bring our minds to believe it was the purpose of the Legislature, if not absolutely to annul the nuptial tie, to utterly annihilate, in every particular, the control and right of custody of the husband. So far as property is concerned, the object of those acts was to protect the property of the wife from the debts of the husband, and, during life, secure its enjoyment to the wife, free from the liabilities incurred by the husband; they confer on her no right to separate from her husband without cause, and to remove from his custody all her personal property. If she has been misused, and, in the judgment of a court of competent jurisdiction, she deserve it, adequate protection and allowance will be afforded, not only out of property owned by her previous to marriage, but out of the estate of her husband. But, to sanction the doctrine that a wife, from mere caprice, may separate from her husband, and live apart from him in such manner as may suit her passions and inclinations, and to deprive him of all marital rights, is nothing short of allowing a wife, at pleasure, to annul the marriage contract; in fact, to restore her to her original condition, with but one exception, the privilege of forming another matrimonial alliance. Such a state of things would be revolting to the moral sense of the community, and yet the sympathizing spirit of some well-meaning persons induce them to contend for postulates, which, in their practical consequences, would realize the disruption of civilized society. Of course we are not to be understood as intimating any such results were favored by counsel

in argument of this case; but as only indicating that, in our opinion, the latitudinarian construction sought to be placed, by persons of generous tempers, upon our legislation, would, if sanctioned, achieve results no less shocking to them than to the rest of the community. Of so great dignity is the contract of marriage esteemed by municipal law and religion, that all others, in binding stringency, are held to be illimitably inferior. This being so, it would require much to convince this court that the Legislature designed more than to protect the wife against the crime, improvidence, or misfortunes of the husband. Such a purpose can be, and is, fulfilled by giving the construction which we have given to the several acts of Assembly.

The plaintiff presented seven, and the defendant five, prayers to the court, the former, save the seventh, were granted, and the latter refused. Of the latter, however, the first three were granted with the following qualification: "That the facts set out in said prayers may be considered in mitigation of any circumstances, if any there be, that could entitle the plaintiff to exemplary damages, if the jury find that a trespass, in fact, was committed by the defendant, as alleged."

The law contained in the plaintiff's first prayer is admitted. The second prayer of the plaintiff asks the court to instruct the jury that "the legal and proper measure of damages, as to the goods and chattels, is the true value thereof, as shown by the evidence in the case, at the time they were taken and carried away." This, we think, the court properly granted. The affirmance of the judgment in this case, and its payment, confer upon the defendant the ownership of the property taken by him, and, therefore, in any view of the case, ought he to pay its value at the time of the asportation. The third asked the court to say to the jury, they had the right to consider any facts and circumstances accompanying and giving color to the trespass, for the purpose of *increasing* the damages. This was clearly correct. The motives which induced a tortious act are always matters for the consideration of a jury. The man who, from bad and malicious intentions, commits a trespass, ought, in justice, to be dealt with more harshly than one

who acts from no vicious feelings, but ignorantly. *Turner vs. Walker*, 3 *G. & J.*, 377. The 4th prayer of the plaintiff only requires the jury to find an additional and unnecessary fact, namely, that the property removed, after its removal, was used in common by the defendant and the inmates of the house of the mother of the wife of the plaintiff. The proof is all one way in regard to this particular, and as the other prayers were properly granted, this supplementary fact required to be found by the jury, ought not, and did not, create any embarrassment with the court. The 5th, 6th and 7th prayers of the plaintiff, and the 1st and 2nd prayers of the defendant, relate to the orders given by the wife, and her agency; those of the plaintiff, denying the right of the wife to interfere, either because of her relation to the plaintiff as wife, or because of a supposed agency; and those of the defendant, claiming that the direction and superintendence of the wife of the plaintiff, if believed by the jury, ought to be taken and considered by them in mitigation of damages. We have already shown that a wife, situated as was the wife of the plaintiff, at the time of the removal, could not justify the trespass complained of, and, also, that because of the legal effect of the judgment in this case, the defendant acquires title to the property; it consequently follows, these three prayers of the plaintiff were properly granted, and those of the defendant rightfully rejected. To guard against misapprehension hereafter, as to the scope of this decision, we will observe, that in reference to negroes, as well as other personal property, our law recognizes the right of one person to have a life or lesser estate in such property, with a remainder over to another. Where the trespass consists of the asportation of property so situated, the owner of a life or lesser estate could only recover, *so far as value* is concerned, the value of the life or lesser estate, and the judgment would only confer on the defendant the interest of the plaintiff, without in any manner operating on the right of any other party. How the rights of parties so circumstanced are to be guarded, are questions which need not now be considered. The rejection of the plaintiff's seventh prayer furnishes no cause of complaint to the appellant. It ought to have been granted. It declares

there is no evidence of agency on the part of the wife. The law confers none, and there is no proof of any having been given specifically; the fact is, the whole evidence negatives any such presumption. The defendant's fourth prayer was correctly rejected, and for the reasons we have assigned in regard to the operation of the judgment. The third prayer of the defendant asks that if the jury should find that any portion of the property taken was the property of the wife, prior to her marriage, that then, as to that portion of the goods, it should be considered in mitigation of damages. The meaning of this, if we understand it, is, that if the jury find the facts which constitute the alleged trespass, then, from the gross value of all the goods taken, should be deducted the value of the particular goods mentioned in the prayer. In speaking of the other prayers, we have stated several reasons why the principle asserted by this prayer is wholly inadmissible. The judgment and its payment gives him title to this, as well as to the other property, and there can be no reason why he should not pay for it. In whom vest the proceeds of the judgment, can be no concern of his, he pays only for that to which he acquires title. The qualification attached by the court to the first three prayers of the defendant was proper, for the reason we have given in treating of the plaintiff's third prayer.

*Judgment affirmed.*