# THE BALTIMORE, CHESAPEAKE AND ATLANTIC RAILWAY COMPANY *vs.* WILLIAM A. KIRBY.

*Expulsion of Passenger from Train—Evidence—Punitive Damages.*

In an action to recover damages for unlawful expulsion from a railway train, where one question is whether the plaintiff's ticket entitled him to travel on that train, evidence as to the reason why the right to travel thereon had been given to holders of tickets like the plaintiff's is immaterial.

Plaintiff's evidence in an action for ejection from a railroad train was to the effect that after he had been put off the car, and while he was holding to the railing of the steps, as the train started again, the conductor kicked him in the breast and so caused him to fall violently to the ground. *Held*, that this evidence was sufficient, if believed by the jury, to authorize them to award punitive damages.

Appeal from the Circuit Court for Dorchester County (HOLLAND and LLOYD, JJ.) There was a judgment in favor of the plaintiff for $3,000.

The cause was argued before McSHERRY, C. J., BRISCOE, BOYD, SCHMUCKER and JONES, JJ.

*William H. Adkins* (with whom were *Phillips L. Goldsborough* and *Robert P. Graham* on the brief), for the appellant.

*J. C. Mullikin* and *Joseph B. Seth*, for the appellee.

McSHERRY, C. J., delivered the opinion of the Court.

This case is before us for the second time. The first appeal is reported in 88 Md. 409. There are but two questions brought up by the present record. One of these concerns the admissibility of evidence; and the other relates to the granting of the second prayer of the plaintiff. This

second prayer is identical in terms with the fourth prayer
which was granted on the former trial and which was not
then objected to by the defendant.   There is no complaint
as to the structure of the prayer, nor as to the legal prin-
ciple which it embodies.   The sole ground upon which it
is insisted that it should have been rejected is, that there
was no evidence to support one of its hypotheses ; and that
hypothesis is the one upon which the claim for punitive
damages is founded.

The suit was brought to recover damages for the forcible
ejection of the plaintiff from an express train of the de-
fendant company by the servants of the defendant.   A
detailed statement of the circumstances which preceded
and culminated in the expulsion of the plaintiff need not be
given, because neither of the questions which we have to
pass on requires it.   And these questions do not require it
because, as respects the prayer, the theory upon which it
was constructed admits that the defendant's servants had
the right to eject the plaintiff; and because, as respects the
evidence objected to, it throws light only on the plaintiff's
first prayer, the accuracy of which was conceded by the
defendant.   Indeed, we ought to say that there is compara-
tively little necessity to discuss the prayer to which objec-
tion is made, because precisely the same measure of dam-
ages which it prescribed is contained in the plaintiff's third
prayer, which was also conceded by the defendant to be
right.   But we will briefly consider both questions.

An excursion train was run from Claiborne to Ocean
City, on the twenty-fifth day of August, eighteen hundred
and ninety-seven.   Persons living in Trappe and Oxford
were given the privilege to return from Ocean City on the
express train instead of by the excursion train.   On the
day named the plaintiff bought an excursion ticket at Eas-
ton and went to Ocean City.   In the evening he took the
express train to return, and this was the train from which
he was ejected.   On the first trial of the case it was con-
ceded that he had a right to return on this express train.

On the second trial the defendant changed front and denied that the plaintiff was authorized to ride on the express train. It became necessary, then, for the plaintiff to show that he was rightfully on the train from which he was expelled, and he accordingly proved that public notice by hand-bills had been given to the effect that excursionists from Oxford and Trappe could return on the express which left Ocean City ten minutes ahead of the excursion train. That he lived at Trappe and had seen the notice before he purchased his ticket at Easton. Trappe is not on the line of the defendant's road, but is reached by the Delaware and Chesapeake Railroad, which intersects the defendant's road at Easton. As the express train returning from Ocean City reached Easton in advance of the time when the train on the Delaware and Chesapeake passed through Easton to Trappe and Oxford; and as the excursion train did not reach Easton until after the Delaware and Chesapeake train had gone, persons from Trappe and Oxford who went upon the excursion would not have been able to reach home by rail unless they had been allowed to return from Ocean City by the express. But it appeared the plaintiff had not gone from Trappe to Easton by rail, but had driven there in his carriage. The defendant thereupon moved the trial Court to strike out the evidence which showed that persons from Trappe and Oxford were entitled to return from Ocean City on the express train, and based the motion on the ground that the plaintiff had driven to Easton and had not gone there by the Delaware and Chesapeake Railroad. The motion was overruled and to this action the first exception was taken.

As an unqualified privilege had been given to excursionists living in Trappe and Oxford to return from Ocean City on the express train, the *reason* for granting the privilege was wholly immaterial. Whatever the reason may have been, the fact was held out to the public that persons living in Trappe and Oxford, and who might go on that excursion, could return on the express train, and no reference was

316        B., C. & A. RY. CO. vs. KIRBY.

Opinion of the Court.                [91

made in the advertised notice to the mode by which they
might reach Easton from Trappe or Oxford.   Confessedly
the plaintiff fell within the class of people named in the
public notice, for he was a resident of Trappe, and it made
no difference that he drove to Easton in his carriage instead
of going there by a train on the Delaware and Chesapeake
Railroad.   Had the public notice advised the excursionists
from Trappe and Oxford that only such of them as held
tickets over the Delaware and Chesapeake Road could re-
turn on the express train a different question would have
been presented.   The evidence which the Court refused to
strike out tended to show that the plaintiff was rightfully
on the express train, and there was no error committed in
permitting the jury to consider it.

The only objection to the granting of the second prayer
is that there was no evidence to justify the allowance of
punitive damages.   Even if we were satisfied that there was
no evidence legally sufficient to support a verdict awarding
punitive damages we would find a great, if not an insuperable,
difficulty in reversing the judgment, because the defendant,
by conceding the plaintiff's third prayer, has admitted that
there was sufficient evidence before the jury to show that
" the plaintiff was treated with unnecessary and reckless
violence and indignity," and this would be sufficient to
warrant the infliction of such damages.   In conceding a
prayer there is involved, of necessity, a concession that
there is sufficient evidence to support the hypotheses of the
prayer ; and as the third prayer left it to the jury to find
whether the plaintiff had been treated with unnecessary and
reckless violence and indignity, it must be assumed that the
defendant conceded there was evidence which tended to
show that fact.   How, then, after such a concession can it
object to the granting of another prayer when the sole
ground of objection to the latter is that there was no evi-
dence to prove the very thing which the concession admits
had been proved ?   But, passing this by, what is the doc-
trine on the subject of punitive damages in such a case as

this? In the recent case of *Smith* v. *P. W. & B. R. R. Co.*, 87 Md. 48, it was considered and discussed and we need do no more than say that whenever the injury complained of has been inflicted maliciously or wantonly and with circumstances of contumely or indignity, the jury are not limited to the ascertainment of a simple compensation for the wrong committed against the aggrieved person. The malice spoken of implies that the act complained of was conceived in the spirit of mischief, or of criminal indifference to civil obligations. This is the rule. Now, there is a conflict of testimony in the record. If the defendant's witnesses were believed by the jury then no exemplary damages ought to have been given. If, on the other hand, the plaintiff's witnesses were credited, then there was evidence which showed such contumely, force and indignity as would justify the jury in going beyond the limit of mere compensatory damages. Two witnesses testified that after the plaintiff had been forcibly put off the car in the open country the conductor whilst standing on the car-steps kicked him in the breast. The car was in motion at the time, having been started by the direction of the conductor. The plaintiff, who was holding to the steps-railing, fell to the ground and the train passed on. Kicking a man in the breast whilst he is holding to a moving car and thereby throwing him violently to the ground can scarcely be described as other than " criminal indifference to civil obligations." If the conductor was right in putting the plaintiff off he was authorized to use all necessary force in a proper way to do what he had the right to do ; but that authority does not carry with it a liberty to treat the offending individual with the indignity and contumely which are involved in *kicking* a person loose from a moving train. There was evidence tending to show that this had been done, and it was for the jury to say whether that evidence was true. There was, consequently, evidence which supported the hypothesis of the prayer and the objection founded on the want of such evidence cannot be sustained.

. The rulings excepted to being right the judgment appealed against will be affirmed.

*Judgment affirmed with costs above*
*and below.*

(Decided June 14th, 1900.)