## THE NORTHERN CENTRAL RY. CO. *vs.* ROSIE NEWMAN.

*Unlawful Detention of Passenger by Railway Conductor—Assault—Punitive Damages.*

When a wrongful act is committed in the honest assertion of a supposed right or in the discharge of a duty, or without any evil intention, there is no ground upon which exemplary or punitive damages can be awarded.

Plaintiff, a woman peddler carrying a small pack containing her merchandise was a passenger on defendant's railway. When the conductor took up her ticket he demanded twenty-five cents additional for her pack. A similar demand had previously been made upon her and she had twice complied with it, but on the occasion in question she declined to do so. When the train arrived at its destination the conductor and brakeman refused to allow the plaintiff to get off until she had made the payment demanded and pushed her back when she attempted to alight, but she was finally permitted to go without paying. There had previously been posted in the railway stations a notice signed by defendant company's agents to the effect that peddler's packs or baskets would be charged for at regular excess baggage rates, no amount being collected less than twenty-five cents. In an action against the railway company for assault, the trial Court instructed the jury that if the conductor detained the plaintiff in the car by force and violence, she was entitled to recover and that in assessing damages the jury might award reasonable compensation from a consideration of the nature of the force applied and plaintiff's sense of indignity and humiliation. By another instruction the jury were told that if the conductor acted willfully and with intent to inflict pain and humiliation upon the plaintiff, then they may award her exemplary or punitive damages as a punishment to the defendant for such wrongful act. *Held,* that the conductor was seeking to enforce a regulation of the company, and since there is no evidence of malice or evil motive on his part, the instruction authorizing the jury to award punitive damages was erroneous.

Appeal from Baltimore City Court (DENNIS, J.)

The cause was argued before McSHERRY, C. J., BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Shirley Carter* (with whom was *John J. Donaldson* on the brief), for the appellant.

*William Colton,* for the appellee.

JONES, J., delivered the opinion of the Court.

It appears from the record in this case that the appellee sued the appellant, a railroad corporation, in the Court below, alleging in her *narr.* as a cause of action, briefly stated, that the appellant assaulted and beat her, and caused her to be assaulted and beaten; and detained, restrained and unlawfully imprisoned her, and caused her to be so detained, restrained and unlawfully imprisoned.   The case was tried before a jury and upon the trial there was evidence on the part of the appellee that on the 27th of January, 1902, she was a passenger on the cars of the appellant going from Baltimore City to Sparrows Point a station on the railroad operated by the appellant; that she had purchased, and paid the price of, a ticket entitling her to transportation over said railroad from the former place to the latter; and that while being so transported and upon arrival at her destination she was forcibly detained in, and prevented from leaving, the cars by the employees of the appellant, for some minutes after other passengers had left.   At the conclusion of the testimony in the case the appellee asked three instructions to the jury and the appellant one, all of which were granted.   The verdict of the jury, under these instructions, was in favor of the appellee and from the judgment entered thereon the appellant brought this appeal.

The question presented for the consideration of this Court arises upon exception taken by the appellant to the action of the Court below upon the prayers.   The appellee's first prayer instructed the jury that if they should find from the evidence that she was a passenger on a car of the appellant, and "while such passenger the conductor in charge thereof by means of force and violence detained" her "in her seat or in said car against her will" then she was entitled to recover. Her second prayer, that in assessing the damages, if they should find for the appellee, they were "to take into consideration the nature of the force applied to the plaintiff, her sense of indignity and humiliation, and award her such sum

as under all the circumstances of the case" they might "deem a fair and reasonable compensation therefor." Her third prayer was as follows : "If the jury find from the evidence that the conductor acted willfully and with intent to inflict pain and humiliation upon the plaintiff, then they may award her exemplary or punitive damages as a punishment to the defendant for such wrongful act. " The appellant filed special exceptions to this third prayer on the ground that there was "no legally sufficient evidence from which the jury could find that the conductor acted willfully and with intent to inflict pain and humiliation upon the plaintiff" (appellee). The Court below overruled these exceptions and to this action of the Court and to the granting of the appellee's prayers the exception of the appellant was taken.

Upon this exception the only ground for the reversal of the judgment in the case, which was urged in this Court, was the ruling of the Court below upon the appellee's third prayer. Thus the single question here to be determined is whether there was evidence in the cause competent to authorize an instruction to the jury that they might award the appellee punitive damages. In considering and deciding this question more particular reference must be made to that part of the testimony upon which the appellee's third prayer was based. The appellee testified on her own behalf that she was making a living by peddling and selling things which she carried from place to place in a bundle, a small one, weighing from ten to fifteen pounds ; that she was in the habit of selling all kinds of things such as stockings, handkerchiefs, towels, etc.; that on the occasion here in question she boarded the cars of the appellant and sat with the bundle she was then carrying, and which contained articles that had already been ordered and others that she was carrying to sell, in her lap; that the conductor came for her ticket which she gave him, and he then demanded a quarter, and in answer to her inquiry what this was for, said it was for her bundle; that she refused to pay this, protesting that she was a poor woman and could not afford to pay it ; that she saw so many people have big satch-

els, market baskets and bags who did not pay for them; that
she had been traveling on the train for eight years and no
other conductor had exacted a charge for her bundle ; that
this conductor was always demanding pay for her bundle and
a couple of times she paid him the quarter because he took
her bundle and went to the baggage room with it ; that upon
her persisting in her refusal to pay for the bundle the conduc-
tor said to her "just wait and I will get you in the station"—
"just watch and I will get you in the station"—"he said I will
talk to you at the station;" that the conductor spoke in a loud
tone and seemed angry; that when the station was reached
she got up, and taking her bundle, was about to leave the
car with the other passengers when suddenly the conductor
came and pushed her back to her seat and kept her from
going out and said she had to pay a quarter for that package;
that she again refused giving the same reasons that have been
mentioned; that the baggage master, the brakeman and the
conductor all got around her; that she wanted to go and they
chased her back and said she was not "going" until she paid
the quarter ; that she refused to pay and "he said I will let
you go this time, but watch yourself the next time, I will get
you if you do not pay."   Another witness, who did not see
the occurrences on the occasion in question which were nar-
rated by the appellee, but who had frequently seen the ap-
pellee as a passenger on the train from Baltimore to Sparrows
Point said, in answer to a question "what was the habitual
treatment" of the conductor towards the appellee, "he seemed
to persecute her, wanted to collect money from her for a pack-
age that she carried; that was his action on a good many oc-
casions ;" and to a further question said his manner towards
her on such occasions was "rather dictatorial."

It was in testimony on the part of the appellant that at the
station at which appellee testified she bought her ticket on the
27th of January, 1902, there had been posted prior to that
date a notice as follows: "Local Express Baggage Tariff—in
effect April 1st, 1895. Peddlers' packs or peddlers' baskets
will be charged for at regular excess baggage rates for full

weight, no amount being collected less than twenty-five cents. The above instructions supersede all others in the particulars referred to," to which was appended the names of the General and Assistant Passenger Agents and the General Baggage Agent of the Railroad Company." And as to this there was no contradiction.

Now the question is, does the testimony recited form a proper legal basis for the allowance of punitive damages against the appellant in this case? The record discloses no other to which can be ascribed that effect. Questions of the character of the one raised here upon the third prayer of the appellee have been presented to the consideration of this Court in a number of recent cases, and the rule of law by which they are to be determined has been repeatedly stated—nowhere better, perhaps, than in the case of *Phil , Wilm. & Balto. Railroad Co.* v. *Hoeflich,* 62 Md. 300, where it is said : "The force and deliberation with which a wrongful act is done, are not necessarily the tests by which the question of punitive damages is to be determined. On the contrary, to entitle one to such damages there must be an element of fraud, or malice, or evil intent, or oppression entering into and forming part of the wrongful act. It is in such cases as these that exemplary or punitive damages are awarded as a punishment for the evil motive or intent with which the act is done, and as an example or warning to others. But where the act, although wrongful in itself, is committed in the honest assertion of a supposed right—or in the discharge of duty, or without any evil or bad intention, there is no ground on which such damage can be awarded." In the subsequent case of *Balt. & Ohio R. Rd. Co.* v. *Boyd,* 63 Md. 325, this was reiterated and the Court, speaking through JUDGE MILLER, said of this statement of the law. "This, we are satisfied, places the doctrine upon the right ground." In the very recent case of *Smith* v. *P. W. & B. R. R. Co.,* 87 Md. 48, it is said : "However this doctrine may be expressed, the adjudged cases now concur in holding that exemplary damages are awarded as a punishment for the evil motive or intention with which the unlawful act is done,

and as a warning or example to others." This same doctrine is enunciated in other authorities—both in adjudged cases and the text books—but the state of our own decisions makes further reference to authorities unnecessary for the purposes of the question here under consideration.

As we have seen, the jury in the case at bar were instructed that, if they should find for the appellee, they could take into consideration "her sense of indignity and humiliation"—that is to say the injury to her feelings caused by the conduct of the servants of the appellant of which she complains, and allow her, by their verdict, compensation therefor. We do not understand the propriety of this instruction to be questioned in this Court. The appellee's third instruction, now under consideration, allowed the jury to go further and, in addition to allowing the appellee full compensation for the injurious consequences of the acts and conduct of the servants of the appellant, including injury to her feelings, to assess damages as a punishment to the appellant. We are of opinion that the evidence here does not make a case for punitive damages. There cannot be, from the evidence in the case, any fair inference of malice, or wantonness, or evil motive "entering into and forming part of the wrongful act" here the subject of the action; or as it is expressed in 1 *Sutherland on Damages*, sec. 393, the act was not done "with the present consciousness of invading another's right."

It has been seen that a regulation of the railroad company imposed a duty upon its servants in charge of its trains, or superintending transportation over its road to collect a charge for the character of package which the appellee was carrying upon the cars. The force and detention of which the appellee complains were used towards her in an effort on the part of the railroad officials to overcome a refusal on her part, without giving sufficient reason, to conform to this regulation. In this these officials did not proceed in a mode which the law recognizes, but they were making an effort to perform a duty; and to prevent an infraction of the regulation in question. The detention to which the appellee was subjected was their in-

sistence upon her conforming to the regulation; and the force used, assuming the truth of the evidence as to that, was not such as, in itself or in connection with other evidence, to show malice or ill-will towards the appellee or a wanton indifference to her rights. It would seem we can clearly apply here what was said by this Court in the case of *Phil., Wil. & Balt. R. Rd. Co.* v. *Hoeflich*, 62 Md. *supra*, to the effect that "where the act although wrongful in itself, is committed in the honest assertion of a supposed right or in the discharge of a duty, or without any evil or bad intention there is no ground on which 'punitive' damages can be awarded." We think the case at bar is rather to be referred to the class of cases to which those that have been herein cited belong, than to the class of which *Thilman* v. *Neal*, 88 Md. 525, and *Boyer & Co.* v. *Coxen*, 92 Md. 366, are examples, and we consequently hold that there was error in the granting by the Court below of the appellee's third prayer for which the judgment below must be reversed.

> *Judgment reversed with costs to the appellant and new trial awarded.*

(Decided January 22nd, 1904.)