WILLIAM J. SMITH *vs.* THE PHILADELPHIA, WILMINGTON AND BALTIMORE RAILROAD CO.

*Damages—Violence in Ejecting Passenger from a Car.*

When the conductor of a railroad train forcibly jerks down from the platform of a car a passenger who is dilatory in alighting and thereby delays the train, there can be no award of exemplary damages against the railroad company, in the absence of any evidence to show that the conductor acted wantonly or with malice to the passenger.

Appeal from the Circuit Court for Harford County (WATTERS, J.) The jury were instructed that if the plaintiff was a passenger on defendant's train from Charlestown to Elkton, that then it was his duty to behave himself in a decent and seemly manner while on said train, and to leave it promptly and orderly when it stopped at Elkton ; and if they find that he did not leave said train when it stopped at Elkton, with reasonable promptness, but stood upon the platform of the car and refused to descend therefrom, when requested to do so by the conductor, if they find he was so requested, but said he would get off when he got ready, or words to that effect, and delayed said train for an unreasonable length of time, that then it was the right and duty of said conductor to remove him from said train without using unnecessary force ; and if they further find that in removing plaintiff from said car platform, he was thrown down because of the use of unnecessary force by the conductor, but without malice or evil motive on his part, but simply from misjudgment by the conductor of the amount of force necessary to be used, that then the plaintiff can only recover compensatory damages, and is not entitled to exemplary or vindictive damages.

Also that there was no evidence in the case legally sufficient to entitle the plaintiff to recover exemplary or vindictive damages.

The cause was argued before McSherry, C. J., Bryan, Fowler, Briscoe, Page, Roberts and Boyd, JJ. (Nov. 30 and Dec. 1, 1897).

*Albert Constable* (with whom was *James J. Archer* on the brief), for the appellant.

*L. Marshall Haines* and *Thomas H. Robinson*, for the appellee.

McSherry, C. J., delivered the opinion of the Court.

The only question discussed at the bar in this case was whether the trial Court was right in giving to the jury an instruction that there was no legally sufficient evidence to warrant them in awarding punitive damages against the defendant. A verdict was rendered in favor of the plaintiff, and a judgment was entered thereon for five hundred dollars; but the plaintiff appealed because of the ruling just mentioned. The suit was brought to recover damages for a personal injury.

The plaintiff was a passenger on the cars of the defendant railroad company. He purchased a ticket entitling him to ride from Charlestown to Elkton. He entered the ladies' car and, according to his own testimony, after taking a seat placed his feet, which were muddy, against the side of the car just under the window. Whilst in that reclining posture he was approached by "some one" that he afterwards described as the brakeman, who "grabbed" him and said "Put your feet down or I will make you do it." "This," the plaintiff went on to testify, "was very rough treatment, and I resented it very promptly." He further swore that he used pretty plain language to the person who had accosted him; and it is unquestionable that he thought the person whom he addressed was the brakeman. Whether conductor or brakeman, the official wanted to know, so the plaintiff said, where he, the plaintiff, intended to get off; and to that inquiry, which was a perfectly proper one, the plaintiff stated that he replied, "None of your business, I

can take care of myself." When the train reached Elkton, the plaintiff's destination, the brakeman said " Get out here, this is Elkton," and the plaintiff replied, " I will get out when the car stops," to which he said the brakeman rejoined, " I will make you." The plaintiff then proceeded to testify thus: " He did not say this in a very mild manner, and as I approached the door, he looked at me, showing malice on his countenance, and I turned to him and I says, ' Don't put your hands on me,' apprehensive that I might fall. * * * * * The next instant I was headforemost off the cars." It further appeared beyond dispute that the brakeman did not touch the plaintiff; but that he was pulled from the car platform by the conductor who was standing down on the station platform. There can be no doubt in the world that the car had stopped before the plaintiff walked out of the car door to the car platform; because there were two ladies in front of him who had alighted and there were passengers entering from the station platform, whilst the plaintiff stood inside the car and later, on the car platform. Instead of descending the steps he continued on the platform of the car, making no more delay, he says, than he " would have done had a man been standing by him in a threatening attitude ' ' and he remained in that position because he felt apprehensive that the brakeman might push him off. There was evidence adduced to show that the plaintiff had been drinking and that he was under the influence of liquor ; and there was also evidence before the jury tending to show, if not actually showing, that the plaintiff did in fact delay the train by not alighting in a reasonable time after the train had come to a stop at Elkton. Indeed, any other inference from the entire evidence would have been pure conjecture. The plaintiff himself admitted, as just shown by a quotation from his own testimony, that he caused no more delay than he would have occasioned had a man been standing by in a threatening attitude. If he caused no *more* delay that in his judgment he would have produced had a man been standing by in the

attitude he describes, then he *must* have caused *some* delay ;
and he was not justified in causing *any*. Nearly all the wit-
nesses examined in behalf of the plaintiff testified to the
verbal altercation between the plaintiff and the brakeman
on the car platform and to the further fact that the conduc-
tor reached up from the station platform and pulled the
plaintiff down from the car.    The injuries sustained from
that fall are those for which the pending suit was brought.
According to the plaintiff's witnesses there had been no dis-
pute or contention between the plaintiff and the conductor,
and the only remark imputed to the latter is, " Yes, you will
get down," as the conductor reached up, and, in the lan-
guage of one of the witnesses, "jerked " the plaintiff down.
There was much flat contradiction in the evidence, but it
was the province of the jury to decide between the conflict-
ing statements of the several witnesses ; and we have noth-
ing to do with that feature of the proof at all.

Conceding the truth of the plaintiff's case as made out
by his witnesses, was there sufficient evidence before the
jury to justify them in awarding punitive or exemplary dam-
ages ?   We are not concerned as to the right of the plain-
tiff to recover a verdict for something ; nor as to his right
to recover compensatory damages ; and there is, therefore,
no need to discuss the question of the degree of care with
which the company was chargeable by the law.    As the
case stands the jury by their verdict have settled the plain-
tiff's right to recover some damages, and there is, and there
could have been in the conflicting condition of the proof,
no exception in the record, bringing up for discussion the
question as to whether there was a total failure of evidence
to sustain a recovery.

Now, the force with which the act complained of was
done is not the test by which the inquiry as to whether
punitive damages are recoverable, is to be determined.  " On
the contrary," say this Court in *P. W. & B. R. R. Co.* v.
*Hoeflich*, 62 Md. 307, " to entitle one to such damages there
must be an element of fraud or malice, or evil intent or op-

pression entering into and forming part of the wrongful act.
* * * But where the act, although wrongful in itself, is
committed in the honest assertion of a supposed right—or
in the discharge of duty, or without any evil or bad inten-
tion, there is no ground on which such damages can be
awarded." And in *P. W. & B. R. R. Co.* v. *Larkin*, 47
Md. 162, quoting from *Quigley's case*, 21 How. 213, it was
said : " Whenever the injury complained of has been in-
flicted maliciously or wantonly and with circumstances of
contumely or indignity, the jury are not limited to the
ascertainment of a simple compensation for the wrong com-
mitted against the aggrieved person. But the malice spoken
of in this rule is not merely the doing of an unlawful or
injurious act. The word implies that the act complained of
was conceived in the spirit of mischief, or of criminal in-
difference to civil obligations." And the Supreme Court in
*M. &c. R. R. Co.* v. *Arms*, 1 Otto, 493, said : "The tort is
aggravated by the evil motive and on this rests the rule of
exemplary damages."

However this doctrine may be expressed, the adjudged
cases now concur in holding that exemplary damages are
awarded as a punishment for the evil motive or intention
with which the unlawful act is done, and as a warning or
example to others. " The mere fact," observed this Court
in *Hoeflich case, supra,* " that one is forcibly and deliber-
ately ejected from a railroad car, does not necessarily imply
that it was done wantonly or wilfully or with a bad motive,
although the act may be in itself unlawful."

In the record before us there is a total failure of evidence
to show that the act of the conductor in pulling or jerking
the plaintiff from the car was, under all the circumstances
proved by the plaintiff, done either wantonly or under the
influence of a bad motive. On the contrary, the inference
is strong and obvious that no such motive could possibly
have actuated the conductor. It was not shown by any one
that there had been any altercation or dispute of any sort
between the conductor, who actually and incontestably did

the act complained of, and the plaintiff. There is no pretence that the conductor had occasion because of any remark made by the plaintiff, to become incensed or angered, or resentful towards the latter. The whole drift of the evidence adduced by the appellant tended to show that the contention, and the only contention about the position of the muddy boots and the departure of the plaintiff from the car at Elkton was between the brakeman and the plaintiff; and there is not the faintest spark of testimony indicating, or tending to indicate, that the brakeman touched the plaintiff after the latter reached the car platform, or that he in any way directly or indirectly caused or contributed to the injury which ultimately befell him. That there was a delay on the part of the plaintiff in leaving the car is clear beyond question; and that there was a disposition on his part to resent what he assumed or supposed to be the menacing appearance of the brakeman, is wholly free from doubt on the plaintiff's own showing. By his own admission instead of descending the car steps he turned and warned the brakeman not to put his hands on him. This delay of the train and his tardiness in alighting are the only reasons that the evidence furnishes for the conduct of the conductor. If that be so there is no malice, or wantoness shown and no motive suggested for its existence; and it would, therefore, have been improper had the trial Court permitted the jury to speculate and conjecture that there was a sufficient ground for awarding exemplary damages when there was, in reality, no ground at all.

There being no error in the ruling complained of, the judgment appealed against will be affirmed.

*Judgment affirmed with costs in this Court.*