GLENN B. TESTERMAN ET UX. *v.* H & R BLOCK, INC. ET AL.

[No. 582, September Term, 1973.]

*Decided August 8, 1974.*

322

The cause was argued before ORTH, C. J., and POWERS and DAVIDSON, JJ.

*Walter H. Madden*, with whom were *Madden, King & Werner, P.A.*, on the brief, for appellants.

*William F. Abell, Jr.*, with whom were *Heeney, McAuliffe & Rowan* on the brief, for appellees.

POWERS, J., delivered the opinion of the Court.

The posture in which this case reaches us, substantially in the words of both briefs, is this: Mr. and Mrs. Glenn B. Testerman sued H & R Block, Inc. and Joseph B. Dunn in the Circuit Court for Montgomery County, in a three count declaration. One count alleged that the defendants negligently, wantonly, maliciously, and intentionally prepared incorrect income tax returns for the Testermans for the years 1967 and 1968, and claimed compensatory and punitive damages. The second and third counts claimed damages for breach of contract. In a non-jury trial completed on 6 June 1973, Judge H. Ralph Miller, after having granted in part, as to punitive damages, a motion for a dismissal, awarded the Testermans compensatory

damages under the tort count. Judgment was entered under count one for damages in the amount of $690.65 and costs. Judgment was entered for the defendants under counts two and three, "to avoid a double recovery".

Mr. and Mrs. Testerman noted an appeal, and they are the appellants here. H & R Block, Inc. and Dunn noted a cross appeal, but later dismissed it. What we have before us, then, is a judgment in favor of the appellants, not questioned by the appellees. Appellants, although it was in their favor, have appealed from the judgment and complain of two rulings that they feel restricted the amount of damages they should have been entitled to recover. *McAlister v. Carl*, 233 Md. 446, 197 A. 2d 140 (1964). They are:

> 1. The court's ruling that as a matter of law, appellants were not entitled to have the question of punitive damages considered by the court in its capacity as finder of the facts.
>
> 2. The court's ruling that evidence of mental anguish was not admissible as an element of compensatory damage.

When the Testermans completed their evidence, H & R Block and Dunn moved for a dismissal. Maryland Rule 535. Judge Miller ruled that the evidence not only made out an adequate case on breach of warranty, in support of counts two and three, but established a *prima facie* case of negligence under the tort count. He invited argument on the question of punitive damages, and after hearing argument, granted the motion to dismiss as to the claim for punitive damages.

In ruling, Judge Miller said:

> "Now, the test for exemplary or punitive damages has no doubt been somewhat extended in the last few years in Maryland and it is no longer necessary to show actual malice, or an intentional tort.
>
> "Any extraordinary or outrageous behavior that

puts anything beyond the line of simple negligence or any willful or wanton conduct or any deliberate act of course constitutes a cause of action for punitive damages.

\* \* \*

" \* \* \* I personally have always favored high standards in not only all the professions, but all the businesses and all the trades, and I personally resent everything but that, but it is not up to this Court to legislate that everyone who prepares or fills out a tax return must necessarily have 30 hours of accounting at a university or any other judgment of that type.

"The evidence in this case was that both of the people who filled out the returns had had some prior experience in doing tax returns and had both taken the Block course and had worked even prior to their employment with Block in filling out tax returns.

"Mrs. Weisberg had had a course that was conducted by the Federal government some years ago.

"There being no standard, and perhaps there should be, but that is a matter for the State Legislature, the courts have uniformly held that a member of a learned profession, and for that matter anyone who undertakes employment because of his profession, have exceptional skill, \* \* \* that he represents that he possesses the degree of skill usually possessed by those in good standing practicing their specialties in the same locality. He impliedly agrees to use his best judgment, but does not guarantee results.

"It goes on to say that anyone who uses bad faith, that would be another thing, but in a case, St. Paul versus Manufacturers Life Insurance, decided by the Court of Appeals in 262 Md. at 192 the Court said that even though in cases like this, the plaintiff

was injured for no more reason than allowing the other party to make a profit, that that would not entitle them to punitive damages, that this was merely negligence for failing to exercise the standard of care that one would normally exercise.

"Now, while there is evidence, looking at it again in the best light for the plaintiff, that the standard of care was not exercised, there is nothing more that would entitle the plaintiffs to any punitive damages unless you look at the theory of the advertising, coupled with the employment of people who were less than skilled."

\* \* \*

"The Court sees no basis at all under the law of Maryland as it exists at this time for the award of punitive damages and there is no evidence upon which that can be based, and the Court grants the motion to dismiss on the claim for punitive damages."

The motion for a dismissal made by H & R Block and Dunn at the close of the evidence offered by the Testermans asked Judge Miller to rule that upon the facts and the law the Testermans had shown no right to relief. Maryland Rule 535. For that purpose the evidence stood undisputed, and the Testermans were entitled to have the judge consider the evidence and all logical and reasonable inferences deducible therefrom in a light most favorable to them. *Allen v. Steinberg,* 244 Md. 119, 223 A. 2d 240 (1966), *Price v. Levin,* 248 Md. 158, 235 A. 2d 547 (1967), *Shoreham Developers, Inc. v. Randolph Hills, Inc.,* 248 Md. 267, 235 A. 2d 735 (1967). The legal sufficiency of the evidence was to be tested just as the evidence in a jury case would be appraised upon the filing of a motion for a directed verdict. *Isen v. Phoenix Assurance Co.,* 259 Md. 564, 270 A. 2d 476 (1970).

We read Judge Miller's reasons as being based more upon the view that under Maryland law there is no right to recover punitive damages in such a case as this, than upon

the view that the law recognizes the right, but that the evidence [1] in this case was not sufficient to support it.

In either event we disagree. Judge Miller made the proper test, but we think he arrived at the wrong answer. We hold that there is such a right, and that the evidence in this case was sufficient to invoke that right, and to require that the trier of the facts determine whether to allow punitive damages, and, if allowed, the amount.

## The Facts of This Case

We shall now detail some of the evidence favorable to the Testermans which we consider sufficient to have entitled them to have the question of punitive damages submitted to the judge as the trier of the facts.

The Testermans began the operation, in August, 1967, of a gasoline service station on Route 40, at Mt. Airy. In March, 1968, they took all of the records of the business for 1967, and their personal records, to the H & R Block office in Frederick. They went to Block because of their advertisements that they were tax experts. They saw Mr. Dunn. From the information they gave him he prepared the required returns, which showed a loss for 1967.

In March of 1969 they again went to the Block office, taking all of their business and personal records for the year 1968. A Mrs. Weisberg took care of them. The returns she prepared showed a loss. She also prepared an amended return for 1965, taking the benefit of the 1968 loss as a "carryback", to obtain a refund of taxes paid for 1965.

Mr. Testerman questioned the result reached by Mrs. Weisberg. He told her he didn't see how they lost money — they made a living and had drawn cash out of the business for their personal use. Mrs. Weisberg replied that everybody loses money the first couple of years in business, and that

---

1. A demurrer to the first count, as originally filed, was sustained by Judge Miller, with leave to amend. A demurrer to the amended first count was overruled by Judge John P. Moore. The correctness of that ruling is in effect conceded by H & R Block and Dunn, since they did not prosecute their appeal. We point out, however, that it is the sufficiency of the *evidence,* not of the *pleadings,* which was put to the trial judge by the motion for dismissal, and is before us on appeal.

the money they transferred was their hard earned cash and was not taxable.

In January 1970 the Testermans were contacted by an Internal Revenue Agent for an audit. His report showed that the audit was ordered because of the loss carryback claim. They gave the agent the same box of records they had taken to the Block office. A few weeks later the agent called and told Testerman he had put $10,000 of the business receipts in his pocket without reporting them. The agent said he would get the figures. After another call in March, Testerman went to the IRS office in Frederick and got his records and "the figures". He took them to Block's. He was told that a Mrs. Brown would handle it.

Later in March 1970 when he went back to Block's, Testerman was told by Mrs. Brown that she cleared up one correction with IRS, but that she wasn't educated enough to go any further, and she suggested that he hire a tax expert. On that same occasion Testerman spoke to Dunn and said he was getting upset. Dunn said why don't you talk to a lawyer.

The Testermans did see a lawyer, and later a Certified Public Accountant. The CPA went over their records, and the IRS report, and concluded that the IRS was right, and the tax returns were wrong. The Testermans saw another accountant, to take over their books and records, as well as to check the 1967 and 1968 returns, and the IRS report. Upon the advice of both, the Testermans paid the additional taxes, and the penalties assessed, and interest.

The CPA testified at the trial. He said that the returns on their face were not reasonable, even from the point of view of common sense. He said that without an explanation, disbursements could not exceed income, which was the case on both of these returns, and that if a client of his could give no explanation, with additional records or otherwise, he would tell the client to get someone else to prepare the return.

The CPA gave as his opinion that before a person is competent to prepare tax returns involving investments or a business, his training must include 30 semester hours of

background accounting and 6 semester hours of courses in income taxation.

Both the CPA and the other accountant said that the errors were in understatement of gross income, as the IRS found. The understatement was caused in each of the two years in two ways. One resulted when Block deducted "off the top" from gross income the funds that the Testermans had drawn periodically from the business for personal use. The other resulted when Block failed to include in gross income the expenses paid from cash at the station which, for that reason, were never reflected in a bank deposit. All such transactions were, however, reflected in the Testermans' records which they brought on each occasion to the Block office.

The report of the IRS agent was sent to the Intelligence Division because the agent concluded that the understatement was deliberate, with the intent to file a false return. The Intelligence Division evaluated the report, and giving weight to Testerman's limited education, recommended against prosecution.

The accountant engaged by the Testermans testified that after they had paid the penalties and interest to the IRS, he made an appointment with Dunn to discuss reimbursement. All met at Dunn's office. Dunn insisted that he had made no error, and that the H & R Block, Inc. office in Baltimore had told him not to pay the penalties and interest. Apparently some tempers rose, and Dunn called the Testermans troublemakers, ordered them all to get the hell out of his office, and said that if they wanted anything from him they would have to sue.

The accountant testified that he had reviewed both returns, and both were incorrect. He said that a return that shows an unexplainable loss is not complete, and you are begging the IRS to come back and complete it for you. He said that all the tax practitioners he knew would refuse to accept such a return and would not send it in. He also agreed with the CPA in his opinion of the training required for competence to prepare business tax returns.

There was evidence that Dunn, who had gone to the 11th grade in high school, and had some years of work experience, including some bookkeeping, had answered an advertisement of H & R Block, Inc. in Baltimore in 1963, for tax consultants. The ad said that no experience was necessary — Block will train you. He took the 72 hour course taught by a Block employee, and began work as a tax consultant in the 1964 tax season. He taught Block's course in Baltimore in 1965 and 1966, and then became Block's franchisee in Frederick. He advertises for recruits, and teaches the tax consultants who work for him, including Mrs. Weisberg, who began as a part time consultant in 1969. Dunn's franchise prepared 4,400 tax returns in the 1968 season and 4,800 returns in the 1969 season.

The agency of Dunn for H & R Block, Inc. and of Mrs. Weisberg for both were conceded.

A Block advertisement in evidence says, "And when Block does your return, you'll know it's done right", and also says, "We guarantee accurate preparation of every return". The guarantee is stated, "If we make any errors that cost you any penalty or interest, we will pay the penalty or interest".

Dunn described some of the material in the Policy and Procedure book issued by Block, which franchisees and employees must observe. They are told to refer to themselves as tax consultants. They are told never to refer to themselves as tax experts, but if someone else does, do not worry. If asked about training, they are instructed to state that their tax men have been trained in H & R Block schools, and are qualified. They are told also that if someone asks them how long you have been preparing tax returns, they are to answer that Block has been preparing tax returns for over 20 years. They are instructed not to suggest that their full time or part time men are not veterans in the field. They are told also that fees are not refundable, but if gross errors are made causing clients dissatisfaction, they are to issue a gift certificate for next year.

Both Dunn and Mrs. Weisberg emphasized that they take the figures that the client gives them — that they do not

audit, and Mrs. Weisberg added that the only thing guaranteed was the accuracy of her computations.

In the face of the IRS audit and even at the trial, Dunn and Mrs. Weisberg insisted that the returns were prepared correctly, based on the information given them.

### The Law of Punitive Damages

We now inquire into the authorities dealing with the law of punitive damages; what they are, why they are allowed, and when they are allowed.

In 22 Am. Jr. 2d, *Damages*, § 236, it is stated:

> "Exemplary, or punitive, damages are generally defined or described as damages which are given as an enhancement of compensatory damages because of the wanton, reckless, malicious, or oppressive character of the acts complained of. Such damages go beyond the compensatory damages suffered in the case; they are allowed as a punishment of the defendant and as a deterrent to others. The terms 'exemplary,' 'punitive,' and 'vindictive' damages are used interchangeably."

In the same text it is said, in § 237:

> "In most jurisdictions exemplary damages are allowed and awarded as a punishment to the defendant and as a warning and example to deter him and others from committing like offenses in the future. Under this theory such damages are allowed on grounds of public policy and in the interest of society and for the public benefit, not as compensatory damages, but rather in addition to such damages. It has been said that they are imposed in view of the enormity of the offense rather than as a measure of compensation to the plaintiff."

In 25 C. J. S., *Damages*, § 117, the authors say:

> "The theory of exemplary, punitive, or vindictive damages, or 'smart money,' as they are sometimes

called, involves a blending of the interests of society in general with those of the aggrieved individual in particular. According to the more generally accepted doctrine, such damages are allowed not because of any special merit in the injured party's case, but are awarded by way of punishment to the offender, and as a deterrent, warning, or example to defendant and others, or even, it has been said as an expression of the indignation of the jury."

* * *

"Further, the view has been taken that punitive or exemplary damages have reference to the future, rather than to the past, conduct of defendant, and that they are imposed in order to admonish him not to repeat the wrongful act and to deter others from the commission of like ills."

And Restatement, Second, *Torts* (Tentative Draft 1973), § 908 says:

"(1) Punitive damages are damages, other than compensatory or nominal damages, awarded against a person to punish him for his outrageous conduct, and to deter him and others like him from similar conduct in the future."

"(2) Punitive damages may be awarded for conduct which is outrageous, because of the defendant's evil motives or his reckless indifference to the rights of others."

An early and oft-cited discussion of punitive damages by the Court of Appeals of Maryland is found in *Philadelphia, W. & B. R. R. Co. v. Hoeflich*, 62 Md. 300 (1884). In a dispute over the fare of the plaintiff's younger sister, the railroad company's conductor had ejected the plaintiff, whose fare had been paid, from a train. The trial judge granted a punitive damage prayer requested by the plaintiff. From a judgment against it, the railroad company appealed. The Court of Appeals reversed, saying at 306-09:

"We come now to the only question, about which

we think there can be any difficulty in this appeal, and that is the question in regard to the rule of damages laid down by the court. If the plaintiff was wrongfully ejected from the train, she was unquestionably entitled to recover such damages as the jury might think, under all the circumstances, a proper compensation for the unlawful invasion of her rights as a passenger, and the injury to her person and feelings. To so much of the plaintiff's prayer, there can be no objection. But in addition to such damages as these, the court instructed the jury, if the plaintiff was forcibly and deliberately ejected, they might give such exemplary damages, as they might think a proper punishment for the conduct of the defendant. The force and deliberation with which the wrongful act is done, are not necessarily the tests by which the question of punitive damages is to be determined. On the contrary, to entitle one to such damages there must be an element of fraud, or malice, or evil intent, or oppression entering into and forming part of the wrongful act. It is in such cases as these that exemplary or punitive damages are awarded as a punishment for the evil motive or intent with which the act is done, and as an example or warning to others. But where the act, although wrongful in itself, is committed in the honest assertion of a supposed right — or in the discharge of duty, or without any evil or bad intention, there is no ground on which such damages can be awarded.

"In *R. R. Co. v. Quigley,* 21 How. 202, 214, Mr. Justice Campbell says: 'Whenever the injury complained of has been inflicted maliciously or wantonly, and with circumstances of contumely or indignity, the jury are not limited to the ascertainment of a simple compensation for the wrong committed against the aggrieved person. But the malice spoken of in this rule is not merely the doing of an unlawful or injurious act. The word

implies that the act complained of was conceived in the spirit of mischief, or of criminal indifference to civil obligations.'

"And in the still later case, in the same court, of *R. R. Co. v. Arms*, 1 Otto, 489, 493, Mr. Justice Davis said: 'Redress commensurate to such injuries should be afforded. In ascertaining its extent, the jury may consider all the facts which relate to the wrongful act of the defendant, and its consequences to the plaintiff; but they are not at liberty to go farther, unless it was done wilfully, or was the result of that reckless indifference to the rights of others which is equivalent to an intentional violation of them. The tort is aggravated by the evil motive, and on this rests the rule of exemplary damages.'

"We might multiply the cases on this subject if necessary, all concurring that exemplary damages are awarded as a punishment for the evil motive, or intention with which the unlawful act is done, and as a warning or example to others.

"The mere fact, that one is forcibly and deliberately ejected from a railroad car, does not necessarily imply that it was done wantonly, or wilfully, or with a bad motive, although the act may be in itself unlawful. Conceding then that the female plaintiff was wrongfully ejected from the car, the fact that it was forcibly and deliberately done are not the tests by which the plaintiffs' right to recover punitive damages is to be determined. On the contrary, before resorting to so extreme a measure, it was but proper that the conductor should have acted deliberately and not hastily or inconsiderately; and if the plaintiff refused to leave the car on being requested to do so, the use of force became absolutely necessary, the only question being whether the force thus used was excessive.

"The case of *Turnpike Co. v. Boone*, 45 Md. 344, on which the instruction of the court is based

differs widely from the one now before us. There the company in violation of its charter, had exacted illegal and excessive fares, and passengers were compelled either to pay the same, or subject themselves to be expelled from the cars. It was under these circumstances, the court held, that public policy required the corporation should be liable to the highest measure of damages, for the deliberation and force accompanying its illegal conduct. But there are no considerations of public policy that require the application of such a rule in a case like the one now under consideration. On the contrary, to entitle the plaintiff to recover punitive damages, according to all the decisions both in this country and in England, the jury must find that the wrongful act was done wantonly, or wilfully, or in the spirit of oppression. It is the evil motive or intention with which the wrongful act is done, say the Supreme Court, on which rests the rule of punitive damages."

In *Heinze v. Murphy*, 180 Md. 423, 24 A. 2d 917 (1942), the Court of Appeals modified a judgment entered by the judge in a non-jury trial below by reducing a judgment for $1,000.00, which included punitive damages, to a judgment for $25.00 for compensatory damages only. Heinze, a police officer, was sued by Murphy for malicious prosecution after disorderly conduct charges brought against Murphy were dismissed. Heinze had arrested Murphy and placed the charge because of an incident that arose out of an investigation being conducted by Heinze of a traffic accident in which Murphy's wife was involved. The evidence was undisputed that Heinze thought, though mistakenly, that it was his duty as a policeman to bring the charge. The Court, citing *Philadelphia, B. & W. R. Co. v. Green*, 110 Md. 32, 71 A. 986 (1909) and citing and quoting from *Hoeflich, supra,* said, at 429:

"The allowance of exemplary damages must be justified by circumstances of aggravation. A wrong

motive must accompany the wrongful act, and without proof of malice or some other aggravation, exemplary damages cannot be recovered. *Sedgwick on Damages*, 9th Ed., Vol. 1, Sec. 363. In this State the awarding of exemplary damages has been fully discussed, and the rule settled."

The appellant in *Dennis v. Baltimore Transit Co.*, 189 Md. 610, 56 A. 2d 813 (1948), appealed from a judgment below in his favor for compensatory damages, claiming that the trial judge, who tried the case without a jury, erred in refusing to award punitive damages. Dennis and a companion became involved with the conductor of a street car in Baltimore in a dispute about a fare. The conductor stopped the car and went for a policeman who, at the conductor's request, arrested Dennis and his companion on charges of disorderly conduct. The charges were dismissed the next morning by the police magistrate.

In affirming the trial court's refusal to award punitive damages the Court of Appeals said, at 616-17:

"We further hold in this State that if an injury has been inflicted maliciously or wantonly, the jury are not restricted to an award of compensatory damages, but may award in addition thereto such punitive damages as the circumstances of the case may warrant as a punishment for the wrong done and as an example to others. *Sloan v. Edwards*, 61 Md. 89, 100; *Bernheimer Bros. v. Becker*, 102 Md. 250, 256, 62 A. 526, 3 L. R. A., N. S., 221, 111 Am. St. Rep. 356. Thus punitive damages may be awarded to a passenger where he was ejected maliciously and wantonly, if the conductor acted within the general scope of his employment. Likewise, if an arrest of a passenger is made upon the conductor's request with the primary object of injuring and oppressing him, the jury may go beyond the rule of compensation, and award such additional damages as they may deem proper. *Bernheimer Bros. v. Becker*, 102 Md. 250, 62 A. 526,

3 L. R. A., N. S., 221, 111 Am. St. Rep. 356. As we stated in *Heinze v. Murphy*, 180 Md. 423, 24 A. 2d 917, deliberation and unnecessary violence do not necessarily form the basis for allowance of punitive damages. The word 'malice,' as used in the rule for imposition of punitive damages, signifies that the defendant was influenced by hatred and spite and that he indulged in deliberate and wilful mischief to injure the plaintiff. *Philadelphia, W. & B. R. Co. v. Quigley*, 21 How. 202, 16 L. Ed. 73, 77. The word 'wanton' means characterized by extreme recklessness and utter disregard for the rights of others. *Baltimore Transit Co. v. Faulkner*, 179 Md. 598, 602, 20 A. 2d 485. We specifically hold that, in a suit for damages brought by a passenger for false arrest made upon request of the conductor, it must be shown by the plaintiff in order to recover punitive damages that the conductor not only acted wrongfully but without just cause or excuse, and with the evil motive to injure and oppress, or at least with a reckless disregard of the rights of the person injured. *Smith v. Philadelphia, W. & B. R. Co.*, 87 Md. 48, 38 A. 1072; *Fotheringham v. Adams Express Co.*, 36 F. 252, 1 L. R. A. 474. Where the jury determine in a suit for false arrest that the arrest, even though unjustifiable, was requested in the honest assertion of a supposed right while in the discharge of duty, and was not from malice, punitive damages should not be awarded. *Philadelphia, W. & B. R. Co. v. Hoeflich*, 62 Md. 300, 307, 50 Am. Rep. 223."

The Court of Appeals further considered the character of malice which must be shown before punitive damages may be submitted to a jury, in *Drug Fair v. Smith*, 263 Md. 341, 283 A. 2d 392 (1971), where Judge Digges, speaking for the Court, said, at 351-52:

"Drug Fair claims error was committed when the trial judge failed to instruct the jury that it must

find *actual* malice before awarding punitive damages. Appellant correctly accepts the general rule, applicable to all personal injury cases, that if the injuries are 'inflicted maliciously and wantonly, the jury is not restricted to actual or compensatory damages but may give in addition thereto such punitive or exemplary damages as the circumstances of the case will warrant.' *Galusca v. Dodd,* 189 Md. 666, 670, 57 A. 2d 313 (1948). However, relying on prior decisions of this Court appellant then concludes that such an award can only result if actual, not implied, malice is proved. *Dennis v. Baltimore Transit Co.,* 189 Md. 610, 56 A. 2d 813 (1948) (wrongful ejection and false imprisonment); *Heinze v. Murphy,* 180 Md. 423, 24 A. 2d 917 (1942) (assault and false imprisonment); *Knickerbocker Co. v. Gardiner Co.,* 107 Md. 556, 69 A. 405 (1908) (wrongful interference with contract) and *Bernheimer v. Becker,* 102 Md. 250, 62 A. 526 (1905) (assault and false imprisonment). It claims that here the jury instructions did not give the definition of actual or express malice but instead described implied malice. Without discussing the issue of whether punitive damages can be based on implied malice we, nevertheless, disagree with the appellant's conclusion that the jury instruction did not explicitly delineate the necessary elements of actual malice. Actual or express malice may be characterized as the performance of an unlawful act, intentionally or wantonly, without legal justification or excuse but with an evil or rancorous motive influenced by hate; the purpose being to deliberately and wilfully injure the plaintiff. *Associates Discount v. Hillary,* 262 Md. 570, 278 A. 2d 592 (1971); *Vancherie v. Siperly,* 243 Md. 366, 221 A. 2d 356 (1966); *Galusca v. Dodd, supra; Dennis v. Baltimore Transit Co., supra; Heinze v. Murphy, supra;* Prosser, *Law of Torts,* 9-14, § 2, Ch. 1 (3d ed. 1964)."

In a line of cases having their genesis in the area of contract law, the Court of Appeals has considered the propriety of punitive damages in claims for breach of contract, or for torts arising out of or involving contractual relationships. The grandfather case in this line is *Knickerbocker Co. v. Gardiner Co.*, 107 Md. 556, 69 A. 405 (1908). It was summarized by Judge Smith, writing for the Court of Appeals in *St. Paul At Chase v. Manufacturers Life Ins. Co.*, 262 Md. 192, 278 A. 2d 12 (1971) as follows, at 237-38:

> "There a dairy company had a contract with an ice company by which the ice company was to supply the dairy company with ice during a certain season at a designated price. The ice company procured large quantities of ice from Knickerbocker, a company manufacturing ice. Knickerbocker, knowing of the existence of the contract between the dairy company and the other ice company and intending to obtain a benefit for itself, notified the other ice company that if it sold ice to the dairy company Knickerbocker would refuse to supply any ice to it. Consequently, the ice company broke its contract with the dairy company and that company was compelled to purchase ice from Knickerbocker at a price higher than that stipulated for in its contract with its original supplier."

The Gardiner Dairy Company had sued Knickerbocker and claimed compensatory and punitive damages. The trial judge allowed the jury to consider both. The Court of Appeals reversed. What Chief Judge Boyd said for the Court, at 569-70, bears repeating:

> "But the difficulty is that there is no evidence of malice in this case, unless it be such as some of the cases speak of — that the intention to benefit the defendant, or to injure the plaintiff, is to be treated as evidence of malice. But we have found no case in which exemplary damages were allowed for malice implied from such facts. * * * We do not mean to

say there may not be such damages in cases of this character, for if, for example, there was evidence tending to show that the defendant had caused the contract to be broken for the sole purpose, and with the deliberate intention of wrongfully injuring the plaintiff, exemplary damages might be recovered, but when the object was merely to benefit itself, although the plaintiff would be thereby injured, there would be no more reason for allowing such damages than there would be in a suit by one party to a contract against the other for breach of it."

A case which arose out of a contract for the sale of a tractor was *McClung-Logan v. Thomas*, 226 Md. 136, 172 A. 2d 494 (1961). Although it had sold the obligation for the unpaid balance, and the conditional sale contract securing it, to a bank, McClung-Logan later replevied the tractor. In approving the allowance of punitive damages the Court said, at 147-49:

"The trial court's instruction authorized the jury to give punitive damages in their discretion, provided they found that there was a wanton, wilful, and malicious course of action and activity on the part of the appellant. That punitive damages are allowed in such cases and that such an instruction is proper is clearly established. The legal principles, as stated in the instruction, in almost identical terms, have been repeatedly sanctioned by the Maryland cases. *Superior Construction Co. v. Elmo*, 204 Md. 1, 15, 102 A. 2d 739; *Saunders v. Mullinix*, 195 Md. 235, 240, 72 A. 2d 720; *Nichols v. Meyer*, 139 Md. 450, 452, 461, 115 Atl. 786; *Medairy v. McAllister*, 97 Md. 488, 489, 495, 497, 55 Atl. 461; *Sloan v. Edwards*, 61 Md. 89, 101; *Strasburger v. Barber*, 38 Md. 103, 104; *Moore v. Schultz*, 31 Md. 418, 423; *Snively v. Fahnestock*, 18 Md. 391, 395; *Schindel v. Schindel*, 12 Md. 108, 123; see also 1 Poe, *supra*, § 240; 52 Am. Jur., *Trespass*, § 10, 842, and § 57, 878; 46 Am. Jur., *Replevin*, § 139, 75.

"The appellant in its brief argues that the trial court did not, but should have, defined the nature of malicious and wanton conduct. These words do not require definition. This Court has repeatedly approved such instructions containing these words without further definition. *Nichols v. Meyer, Medairy v. McAllister, Strasburger v. Barber,* all *supra.*

"For cases where punitive damages for wrongful possession or repossession by holder of conditional sales contracts were allowed see 153 A.L.R. 769. In *Perlick v. Pacific Discount Corp.* (Cal.) 127 P. 2d 647, where defendant refused to accept a cashier's check in payment of full amount due, and in *Booth v. Peoples Finance Co.,* (Cal.) 12 P. 2d 50, where defendant refused full payment when offered, it was held that these actions furnished a basis for the finding of malice or oppression and the awarding of punitive damages. For other cases involving wrongful withholding or taking by creditors in which punitive damages were recovered, see 54 A.L.R.2d 1375, 1381.

"Punitive damages are properly a question for the jury in an action for wrongful conversion of personal property where the act of the defendant is accompanied with fraud, ill will, recklessness, wantonness, oppressiveness, wilful disregard of the plaintiff's rights, or other circumstances tending to aggravate the injury. 53 Am. Jur., *Trover and Conversion,* § 104, 895; 10 Am. Jur., *Chattel Mortgages,* § 175, 831.

"Malice, fraud, deceit and wrongful motive are oftenest inferred from acts and circumstantial evidence. They are seldom admitted and need not be proved by direct evidence. *Geisey v. Holberg,* 185 Md. 642, 643, 45 A. 2d 735; *Stouffer v. Alford,* 114 Md. 110, 119, 78 Atl. 387; 2 Waterman, *Trespass,* § 1107.

"There was ample evidence, both factual and

circumstantial, from which a jury could find that appellant acted wilfully, wantonly, wrongfully, and maliciously in utter disregard of appellee's rights. It was a reasonable and proper inference that appellant became provoked with appellee's numerous requests that the defective condition of the tractor be corrected and that it determined to put a stop to the complaints by seizing the tractor and forcing the appellee to sign a release of all claims that he might have. The validity of this inference was clear in the light of appellant's insistence that appellee release all claims as a condition for appellant's acceptance of the redemption payment it had demanded of appellee and which it had stated it would accept. The appellant's action in this respect constituted an aggravation of the wrongful act of conversion. This wrongful detention of appellee's tractor following its wrongful seizure, with knowledge of the fact on the part of appellant, could be found by the jury to be wanton and malicious conduct."

In *Damazo v. Wahby*, 259 Md. 627, 270 A. 2d 814 (1970), the Court of Appeals considered the allowance by the trial judge of punitive damages in tort claims of conspiracy and illegal interference with contract rights by two real estate brokers against representatives of corporate sellers and buyers who wrongfully circumvented the brokers to avoid payment of commissions. The Court, speaking through Chief Judge Hammond, held that it was error to allow punitive damages. It said, at 638-39:

"The Maryland rule is that malice in the sense of deliberate and improper violation of a known right, that is, absence of legal justification, will support an action and permit recovery of compensatory damages for deprivation of known contractual rights but that actual malice must be shown to support punitive damages. *Knickerbocker Co. v. Gardiner Co.*, 107 Md. 556; *Stannard v. McCool*, 198

Md. 609; *Heinze v. Murphy,* 180 Md. 423. There is no evidence here to show more than that Damazo wanted to benefit himself by receiving the gross purchase price without diminution for commissions and the various purchasers wanted to pay a lesser purchase price that the avoidance of the earned commissions would permit."

In *St. Paul At Chase,* after citing and quoting from *Knickerbocker* and *Damazo,* Judge Smith said, at 238-39:

"It is true, as St. Paul urges, that there has been discussion in the Maryland cases of wanton conduct as permitting the recovery of punitive damages. These cases include *Moore v. Schultz,* 31 Md. 418 (1869); *Sloan v. Edwards,* 61 Md. 89 (1883); *Philadelphia, W. & B. R.R. v. Hoeflich,* 62 Md. 300 (1884); *Baltimore Transit Co. v. Faulkner,* 179 Md. 598, 20 A. 2d 485 (1941); *Heinze v. Murphy,* 180 Md. 423, 24 A. 2d 917 (1942); *Dennis v. Baltimore Transit Co.,* 189 Md. 610, 56 A. 2d 813 (1948); and *Vancherie v. Siperly,* 243 Md. 366, 221 A. 2d 356 (1966). Comfort is derived from such comments as that of Judge Delaplaine for the Court in *Baltimore Transit Co. v. Faulkner,* where at page 602 'wanton' was defined as: 'Characterized by extreme recklessness and utter disregard for the rights of others.' None of these cases arose from contract actions. We interpret the language of those cases which speak of wanton conduct or wantonness as being a basis for awarding punitive damages as referring to such conduct as would carry an implication of malice or as conduct from which one would draw a necessary inference of malice, conduct from which one might determine the existence of actual malice. There is no evidence of malice in this case. The sum total of the conduct of Weaver Bros. in this case is but little different from the conduct in *Knickerbocker* where Chief Judge Boyd said, '[W]hen the object was merely to benefit itself,

although the plaintiff would be thereby injured, there would be no more reason for allowing such damages than there would be in a suit by one party to a contract against the other for breach of it.' Accordingly, upon the basis of the prior Maryland holdings, we conclude that the conduct of Weaver Bros. was not such as to warrant punitive damages."

In *Daugherty v. Kessler*, 264 Md. 281, 286 A. 2d 95 (1972), the Court, speaking through Chief Judge Hammond, said, at 284:

"We find further that the evidence against Daugherty, Pratt and Griffith was insufficient to support a finding of actual malice, the prerequisite to liability for punitive damages in cases of this nature. *Damazo v. Wahby*, 259 Md. 627; *St. Paul at Chase Corp. v. The Manufacturers L. I. Co.*, 262 Md. 192, which are indistinguishable on the point, require this holding."

Of particular interest on the question of punitive damages in a case related to or arising out of a contractual relationship is the recent case of *Siegman v. Equitable Trust Co.*, 267 Md. 309, 297 A. 2d 758 (1972). Siegman had sued the bank for wrongs arising out of a banking transaction. The trial court had permitted the jury to consider punitive as well as compensatory damages, but after verdicts against the bank for both, the trial judge granted a judgment n.o.v. so as to nullify the award of punitive damages. The Court of Appeals affirmed. In an opinion by Judge Digges it said, at 313-15:

"It is well settled in this State that there can be no award of punitive damages in a pure action for breach of contract. *St. Paul at Chase v. Mfrs. Life Insur.*, 262 Md. 192, 278 A. 2d 12, *cert. denied*, 404 U. S. 857 (1971). The appellants, however, have not brought this suit in contract but rather in tort for conversion and wrongful dishonor. In a tort case

where punitive damages are permitted, in order to obtain such an award a plaintiff must prove actual malice [2] or its legal equivalent. See *D. C. Transit System v. Brooks,* 264 Md. 578, 287 A. 2d 251 (1972); *Daugherty v. Kessler,* 264 Md. 281, 286 A. 2d 95 (1972); *Associates Discount v. Hillary,* 262 Md. 570, 278 A. 2d 592 (1971); *St. Paul at Chase v. Mfrs. Life Insur., supra; Damazo v. Wahby,* 259 Md. 627, 270 A. 2d 814 (1970).

"This Court in *Drug Fair v. Smith,* 263 Md. 341, 352, 283 A. 2d 392 (1971) defined actual malice in the following terms:

'Actual or express malice may be characterized as the performance of an unlawful act, intentionally or wantonly, without legal justification or excuse but with an evil or rancorous motive influenced by hate; the purpose being to deliberately and wilfully injure the plaintiff.'

So, where an act, though wrongful, is committed in the honest assertion of a supposed right and without any evil intention, there is no ground on which punitive damages can be awarded. *Associates Discount v. Hillary,* 262 Md. 570, 278 A. 2d 592 (1971); *B. & O. R.R. Co. v. Boyd,* 67 Md. 32, 40, 41, 10 A. 315 (1887); *B. & O. R.R. Co. v. Boyd,* 63 Md. 325, 334-35 (1885).

"Appellants are seeking punitive damages on both their conversion and wrongful dishonor counts. There can be no doubt in Maryland that under proper circumstances there can be punitive damages in a suit for conversion. In *McClung-Logan v. Thomas,* 226 Md. 136, 148, 172 A. 2d 494 (1961) this Court stated:

[2] Although all cases do not use the phrase 'actual malice' when dealing with punitive damages in tort cases, they delineate the various components which when taken as a whole are in actuality its legal equivalent.

'Punitive damages are properly a question for the jury in an action for wrongful conversion of personal property where the act of the defendant is accompanied with fraud, ill will, recklessness, wantonness, oppressiveness, wilful disregard of the plaintiff's rights, or other circumstances tending to aggravate the injury.'

The tort of wrongful dishonor was recognized in Maryland in *Magness v. Equitable Trust Co.,* 176 Md. 528, 6 A. 2d 241 (1939). Although no decision in this State discusses whether punitive damages are recoverable in a wrongful dishonor case, we see no reason why under proper circumstances punitive damages should not be permitted."

The Court in *Siegman* said further, at 316:

"The issue before us, therefore, is whether there is sufficient evidence of actual malice or its legal equivalent that would permit an award of punitive damages. We agree with the trial court that there was not. Here, all the record indicates is that the bank, on a mistaken understanding of the law, attempted to satisfy out of a joint checking account the individual debt of Mr. Siegman created by his indorsement on a forged check. There is no evidence that the bank either converted his funds or refused to honor his checks out of evil motives intended to injure the Siegmans. Although it acted so as to damage the appellants, the bank was motivated by self interest rather than by a malicious desire to harm the appellants. However, the bank was careless and for this lack of care the appellants were compensated to the tune of $5,000. To justify an award of punitive damage ($15,000) the Siegmans were required to show that the conversion and wrongful dishonor of their check were accompanied by actions which manifest actual malice or its legal equivalent. The record is devoid of such proof."

The question of punitive damages in motor vehicle injury cases has had a very limited history in the Court of Appeals of Maryland. Only recently have such damages been accorded even qualified recognition. That history begins with *Davis v. Gordon*, 183 Md. 129, 36 A. 2d 699 (1944), and, with an intimation in *Conklin v. Schillinger*, 255 Md. 50, 257 A. 2d 187 (1969) of things to come, ends, for the present, with *Smith v. Gray Concrete Pipe Co.*, 267 Md. 149, 297 A. 2d 721 (1972). In the first two of this trio of cases punitive damages were not allowed. In *Conklin*, and perhaps in *Davis* also, the Court's ruling was based on the nature of the evidence in the case, but in *Conklin* the Court pointed out that none of its decisions had held that in no conceivable set of facts could such damages be recovered. It observed, at 71:

> "The difficulty in the Maryland cases arises in regard to factual situations in which there is no evidence of *actual intent* to injure or of *actual malice* toward the injured person, but in which the defendant's conduct is of such an extraordinary character as possibly to be the legal equivalent of such actual intent or actual malice, sometimes described as 'wanton,' 'reckless disregard of the rights of others,' and the like. We rather agree that in this latter type of situation, the language of some of the Maryland cases needs further interpretation and possible reconsideration to reach a more clear-cut rule * * *."

In *Smith v. Gray Concrete Pipe Co.*, *supra*, the Court of Appeals, speaking through Judge Levine, saw the occasion for such further interpretation. The Court reviewed the broad subject of punitive damages, and referred to many of its cases which have considered the subject, in various aspects. It concluded its general discussion of the law by saying, at 168:

> "We regard a 'wanton or reckless disregard for human life' in the operation of a motor vehicle, with the known dangers and risks attendant to such conduct, as the legal equivalent of malice. It is a

standard which, although stopping just short of wilful or intentional injury, contemplates conduct which is of an extraordinary or outrageous character. Yet, it is both a functional and definitive test which, as we have noted, enjoys the virtue of having been frequently applied in this state. And if, as a test, it has been regarded as adequately stringent to serve as a basis for possible imprisonment, then, surely, there appears to be no valid reason for deeming it too liberal for imposing civil sanctions. We hold that it is the standard by which claims for exemplary damages arising out of motor vehicle operation are to be tested."

The Court then proceeded to consider the allegations in the pleadings before it in the light of what it held the law to be. In concluding that the complaint, which had been certified to it as a question of law by the United States District Court for the Eastern District of Virginia, stated a claim upon which punitive damages may be awarded pursuant to Maryland law the Court said, of Gray Concrete Pipe Co., which owned the truck involved, and employed the driver, at 172:

"The salient feature of the case at bar is that the conduct of Gray which subjects it to possible exemplary damages did not occur under the pressures of a highway crisis, where what might superficially appear to be caused by 'extraordinary or outrageous conduct' could be merely the result of poor judgment exercised under such circumstances. Rather, the conduct alleged here reflects a premeditated decision, deliberately arrived at, by an indifferent employer in possession of facts which should have indicated almost certain harm to others. We cannot imagine a more striking case of 'wanton or reckless disregard for human life.' "

### Summary of the Law

We have set out, at a length seldom called for in a judicial opinion, what we find to be the more significant cases in

Maryland on punitive damages. We have done so to illustrate the variety of expressions employed in different cases, each no doubt best suited to the facts of the case at hand.

The "what" and the "why" of punitive damages may be answered by stating that such damages are a penalty against a defendant, added to compensatory damages, assessed for reasons of public policy and in the interest of society, not as a reward to the plaintiff, but as punishment to the offender, and as a warning to him and to others to deter them from similar conduct in the future.

The "when" of punitive damages presents a question more difficult to answer, because we perceive in the cases judicial recognition of an expanding breadth in the public policy which has contributed to the development of the law in this area. We see changes in viewpoint, subtle more than abrupt, but nonetheless clear.

Conduct by a tortfeasor which, upon being shown to have accompanied the wrongful act, will permit a jury to consider assessment of punitive damages, has been described in the authorities by a multitude of characterizations. Typical words or phrases are: malice, actual malice, fraud, ill will, evil intent, evil motives, oppression, wantonness, wilfullness, outrageous conduct, other aggravation, influenced by hatred and spite, deliberate intent to injure, reckless disregard of the rights of others, wanton conduct from which one might determine the existence of actual malice, legal equivalent of malice, and wanton and reckless disregard of the rights of others amounting to the legal equivalent of actual malice.

Malice, as the motivation for the wrongful act, appears as the key word in virtually every discussion of punitive damages. Other words and phrases, rather than adding a different element, either define or illustrate malice, or describe circumstances from which malice may be inferred. The older cases generally stress that the evidence must show *actual* malice, without explaining what malice is when it is not actual. Whatever *presumed* or *constructive* malice may be in tort law, the more recent cases leave no doubt that

malice as a *sine qua non* for punitive damages must be shown to be actual, but that the required showing may be made not only by direct proof, but with equal effect by rational inference from other facts directly proved. Malice, like guilt in a criminal case, is no less actual because it is proved by inference.

What this boils down to, we think, is that when tortious conduct is accompanied by either a deliberate intention to violate the rights of others, or by a reckless disregard of the rights of others, it is committed with actual malice, or its legal equivalent, and punitive damages may be assessed against the wrongdoer.

Neither the deliberate intention to violate the rights of others, nor the reckless disregard of those rights need have specific direction. The malice proved by or inferred from either may be general and impersonal, and accompanies the harm visited upon anyone it may reach, whether the victim is known or unknown to the wrongdoer. It is malice when one deliberately embarks upon a course of conduct potentially harmful to the rights of others, and pursues that conduct with arrogant insensitivity to the consequences.

Actual malice in the traditional sense, involving the personal feelings or emotions of individuals, may be impossible to prove. But actual malice in the legal sense is not now confined to human emotions. It may be found in the pursuit by individuals, themselves anonymous and faceless, of policies and practices of a business organization in which there is inherent a reckless disregard of the rights of others, and exists no less because those practices are designed to promote the self interest of the business organization. It may be such conduct, as the Court of Appeals said in *Smith v. Gray Concrete Pipe Co., supra,* as "reflects a premeditated decision, deliberately arrived at, by an indifferent employer in possession of facts which should have indicated almost certain harm to others."

We hold that in the present state of the law, *Knickerbocker Co. v. Gardiner Co., supra, Damazo v. Wahby, supra,* and *Daugherty v. Kessler, supra,* must be read as applying the same principle that was applied in

*Philadelphia, W. & B. R. R. Co. v. Hoeflich, supra, Heinze v. Murphy, supra, Dennis v. Baltimore Transit Co., supra,* and *Siegman v. Equitable Trust Co., supra;* that to support an award of punitive damages there must be evidence of malice, directly or inferentially, but actions taken in the honest assertion of a supposed right or discharge of a supposed duty, or on a mistaken understanding of the law, without any evil intention or motive, are not malicious. See also *Wesko v. G.E.M., Inc.,* 272 Md. 192, 321 A. 2d 529 (1974), affirming *Wesko v. G.E.M., Inc.,* 19 Md. App. 161, 310 A. 2d 191 (1973), in which the acts of the defendant were negligent almost to the point of stupidity, but were not done with any evil intention, and were held not to be malicious.

We reject and renounce, however, any theory that malice accompanying acts which unlawfully result in harm to others is purged or even diluted merely because those acts also served the self interest of or were designed for the benefit of the wrongdoer.

Judge Levine's statement in *Smith v. Gray Concrete Pipe Co., supra,* that, "We regard a 'wanton or reckless disregard for human life' in the operation of a motor vehicle, with the known dangers and risks attendant to such conduct, as the legal equivalent of malice", may be paraphrased by saying that the law regards a wanton and reckless disregard for the rights of others in the deliberate policies and practices of those engaged in industry, the professions, business, and commerce, with the known dangers and risks attendant to such policies and practices, as the legal equivalent of malice.

### The Law Applied to This Case

The facts which we summarized earlier lead us to conclude that the evidence in this case would support a finding that the faults in both tax returns were more than mere error, oversight, or even mistaken judgment, but occurred because Dunn and Mrs. Weisberg lacked the training, experience, or competence to understand the requirements of the business tax returns which they prepared.

We think also that the evidence, viewed as a whole, would support a finding that the deliberate policies and business

practices of H & R Block, Inc. caused Dunn and Mrs. Weisberg, with a level of competence known to Block, to be held out to the public as qualified tax consultants. The studied use of the word "consultant" [2] and avoidance of the word "expert" could not help but color Block's policies with a tinge of deception.

Whatever the competence of Dunn and Mrs. Weisberg to prepare uncomplicated returns for taxpayers whose income consisted of salary or wages, when Block held them out as qualified tax consultants without limitation, placing them in a position to undertake to prepare returns they were not competent to prepare, that policy or practice was in reckless disregard of the rights of others,[3] and would support an award of punitive damages.

### Compensatory Damages For Mental Anguish

Appellants attempted to offer evidence of the mental anguish they suffered upon being accused of defrauding the government by filing false tax returns, and during the subsequent conferences and negotiations, resulting in payment of additional taxes, interest, and penalties by the Testermans, and the refusal of H & R Block and Dunn to pay the interest and penalties.

Upon objection, Judge Miller declined to admit evidence of mental anguish as an element of compensatory damages. He applied the rule that one may not recover damages for mental anguish unless it is accompanied by physical injury or, in some situations, apprehension of impending physical danger.

The so-called physical impact rule is not without exceptions. The trial judge referred to one, apprehension of impending danger. That exception was applied in *Bowman v. Williams*, 164 Md. 397, 165 A. 182 (1933), and was rejected in

---

**2.** The American Heritage Dictionary of the English Language (1969) defines consultant: "A person who gives expert or professional advice".

**3.** Appellants cite in support of their position Midwest Supply, Inc. v. Waters, 510 P. 2d 876 (Nev. 1973), which affirmed a judgment for punitive damages against an income tax preparer. We have examined the case. It rests on a question of fraud. The case before us involves malice.

*State v. Baltimore Transit Co.*, 197 Md. 528, 80 A. 2d 13 (1951), but in both cases there were apparent and substantial physical results of the mental anguish or shock.

But there are other cases in which the physical impact rule is not applied; ordinarily cases in which the wrong was intentional, or was outrageous. *Green v. Shoemaker*, 111 Md. 69, 73 A. 688 (1909), *Baltimore & Ohio R. R. Co. v. Harris*, 121 Md. 254, 88 A. 282 (1913), *Patapsco Loan Co. v. Hobbs*, 129 Md. 9, 98 A. 239 (1916), *Tea Company v. Roch*, 160 Md. 189, 153 A. 22 (1931), and *Mahnke v. Moore*, 197 Md. 61, 77 A. 2d 923 (1951). In these cases also there was evidence that the shock or anguish, although caused without physical impact, was followed by physical injury manifested by an external condition or by symptoms clearly indicative of a resultant pathological, physiological, or mental state.

More analogous with the case before us are those tort cases brought for libel, slander, malicious prosecution and the like, which ordinarily involve no physical impact, and in which mental anguish is often the most substantial element of compensatory damage.

In the view we take of the tort committed here, we hold that mental anguish suffered by the Testermans was a proper element of compensatory damages, and evidence tending to show it should have been admitted.

> *Judgment entered on Count One of the declaration affirmed as to liability only.*
>
> *Assessment of damages vacated, and case remanded for a new trial on the question of compensatory and punitive damages.*
>
> *Appellees to pay costs.*